[No. 716.   October 2, 1897.]

## HENRY LOCKHART, Plaintiff in Error, v. J. Q. WILLS et al., Defendants in Error.

MINES AND MINING—EJECTMENT—PLEA, ABANDONMENT OF CLAIM—
JURY QUESTION.—In ejectment for the possession of a mining claim,
where the question of the abandonment of possession of the claim
by plaintiff was in issue, it was a question of fact for the jury.

ID.—EJECTMENT—ISSUES—EVIDENCE—COMPETENCY.—Where the issues
of fact were distinctly and clearly presented on the trial, any evi-
dence tending to establish any of such issues was admissible, and
should have gone to the jury.

*Error,* from a judgment for defendants, to the Second
Judicial District Court, Bernalillo County. Reversed and
remanded.

The facts are stated in the opinion of the court.

WARREN, FERGUSSON & GILLETT for plaintiffs in error.

The declarations offered were admissible. 1 Greenlf. Ev.,
secs. 147, 148; 2 Best on Ev., sec. 500; Steph. Ev. 40, art. 28;
Underhill Ev., sec. 118; 5 Am. and Eng. Ency. Law, 366;
Lincoln v. Claflin, 7 Wall. 132; Daggett v. Wallace, 13 S. W.
Rep. 49; 4 Am. and Eng. Ency. Law, 583.

The alleged abandonment of the property by plaintiff
was a pure question of intention in fact for the jury, to be de-
termined upon the facts and circumstances in evidence. Mar-
shall v. Barney, 47 N. W. Rep. 290; Moore v. Rollins, 36 Cal.
338; Taylor v. Middleton, Do. 656; Meyers v. Spooner, 55 Id.
357; Judson v. Malvy, Id. 309; Quigley v. Gillett, 35 Pac.
Rep. 1040; Hammer v. Garfield, 130 U. S. 292; Oscamp v.
Crystal, etc., 58 Fed. Rep. 298; St. John v. Kidd, 26 Cal.
268; Davis v. Perley, 30 Id. 336; 1 Am. and Eng. Ency. Law,
1; Comp. Laws 1884, secs. 1570, 2218, 2258, 2263; Deemer v.
Falkenberg, 4 N. M. 149; New Mexico, etc., v. Crouch, Id.

293; Anderson v. Gray, 25 N. E. Rep. 843; Christy v. Scott, 14 How. 282; Coryell v. Cain, 16 Cal. 567; Wilson v. Fine, 38 Fed. Rep. 792; Gonder v. Miller, 27 Pac. Rep. 333. See, also, as to withdrawal from jury determination of disputed facts in issue where there is a substantial conflict of testimony: Chaves v. Chaves, 3 N. W. Rep. 306; Kirschner v. Laughlin, 4 Id. 389; Manchester v. Ericsson, 105 U. S. 347; Conn. Mut. Co. v. Lathrop, 111 Id. 612; Insurance Co. v. Rodel, 95 Id. 338; Monticlair v. Dana, 107 Id. 162; Jackson v. Jacksonporte, 56 Wis. 310.

CHILDERS & DOBSON for defendants in error.

As to declarations of partners after dissolution of partnership, see: Pars. on Part. 38, 39, 384; Story on Part., sec. 323; Hackley v. Patrick, 3 Johns. 536.

Failure to do the work required by the laws of the United States and of New Mexico, and the district rules, in itself works an abandonment. Ferris v. Coover, 10 Cal. 631; St. John v. Kidd, 26 Id. 272; Davis v. Butler, 6 Id.; Derry v. Rosse, 5 Id.; Mallett v. U. S. Co., Id. 29; Depuy v. Williams, 5 Mar. 251; Strange v. Ryan, 1 Id. 48.

When a party fails to perfect his location abandonment takes place under common law principles independent of any mining rule, and the ground becomes public domain, open to the next occupant. St. John v. Kidd, and other cases cited, supra.

"A court may withdraw a case from the jury, and direct a verdict where the evidence is undisputed, or so conclusive that the court would set aside a verdict in opposition to it." Railroad Co. v. Converse, 139 U. S. 469; Goodlett v. Railroad Co., 122 Id. 391; Gunther v. Ins. Co., 134 Id. 110; Elliott v. R'y Co., 150 Id. 245.

HAMILTON, J.—This is a suit in ejectment, brought here from the district court of Bernalillo county, in the Second judicial district. At the conclusion of the evidence, the court, at the instance of the defendants, directed a verdict in

their favor.    From this action of the court in giving such in-
struction, and taking the case from the jury, this writ of error
is prosecuted.

The errors assigned are:    (1)    The action of the court in
refusing to submit the cause to the jury under the evidence
admitted.    (2)    The improper exclusion of certain evidence
offered by the plaintiff, and the admission of certain evidence
on behalf of the defendants.

The first question, therefore, is, did the court commit er-
ror in refusing to submit the cause to the jury under all the
evidence which it had allowed to be offered in
the case?    The court has the right, and it is its
MINES and mining: duty, to withdraw a case from the jury, and di-
ejectment: plea:
abandonment: rect a verdict if the evidnece in the case is un-
jury question.
disputed, or if the evidence is so conclusive that
the court would set aside a verdict if rendered
in opposition to it.    Richardson v. City of Boston, 19 How.
263; Railroad Co. v. Converse, 139 U. S. 460; Elliott v. Rail-
way Co., 150 U. S. 245.    Does the case before us come within
either of the rules above stated?

The testimony offered in the case, and submitted by the
court to the jury, tended to establish that the plaintiff, one
Charles Pilkey, and one Benjamin Johnson entered into a writ-
ten agreement, signed and executed by each of them, on the
seventh day of May, A. D. 1893, whereby it was agreed that
the said first party, Charles Pilkey, should prospect for and
locate such veins, lodes and placers as he might discover or
know the existence of, containing valuable ores and minerals,
in the name of, and for the joint benefit of, all the parties
hereto, in the proportion of a one-third interest to said first
party, Charles Pilkey, and an undivided two-thirds interest to
said second parties, being the plaintiff and the said Johnson. It
was further provided in said agreement that the said second
parties, to wit, the plaintiff and said Benjamin Johnson, should
furnish certain supplies and material to the said Pilkey while
he was engaged in prospecting, locating and working said
mines, which was fully set forth in the agreement.    The

execution of this agreement is admitted by both the plaintiff and the defendants. It is further established by the testimony that, under this agreement, the said Pilkey, after having received his supplies from the plaintiff and the said Johnson, went into the Cochiti mining district, and located certain mines therein, among which is the claim in controversy in this suit, known as the Sampson location. It is established by the testimony, both by the plaintiff and the defendants, that this location of the Sampson mine was made on the tenth day of July, 1893, by posting a notice in a conspicuous place upon said claim, containing a description of the grounds located, and signed by the plaintiff, Benjamin Johnson, and Charles Pilkey. The evidence also tended to show that the plaintiff in this cause and the said Benjamin Johnson complied with their part of the said agreement, by furnishing the supplies and material to the said Pilkey while he was engaged in such work of prospecting for and locating said property.

The testimony of the plaintiff tended to establish that he visited the said property after it was located, and did some prospecting thereon; that it was arranged between him and Pilkey that the assessment work should be done before the expiration of the ninety days from the date of the posting of said notice; that he had various assays made from samples taken from the ledge; that he had some correspondence with Pilkey, and gave directions and instructions to Pilkey, from time to time, to have the assessment done; that Pilkey was on or near the ground, doing the assessment upon other property which he had located under the said agreement on behalf of the plaintiff, Johnson, and himself, and it was understood that Pilkey should complete this assessment within the time provided by law. His testimony further tended to establish that he, with Pilkey, or through Pilkey, had continued in possession of this ground up to the time that it was taken possession of by the defendants, and located by them; that he never had any intention whatever of giving up or abandoning the ground, but always intended to hold and work it. The testimony of another witness in the case tended to show that Pilkey was in possession

of the ground in conjunction with and for the plaintiff, Lock-hart, and Johnson and himself.    The contention of the de-fendants is that no work had been done upon this mine after its location and after the posting of the notice, so as to hold it un-der the laws of the United States; and their contention is that the plaintiff had wholly abandoned the claim prior to the time the defendants took possession, and located the ground under the name of the Washington Mine.

The testimony on behalf of the defendants tended to show that, after the mine was located and the notice posted, no as-sessment work was done upon the property; that no ten-foot hole was sunk; that the claim was not monumented in the man-ner required by law; and that, in fact, no work was done thereon by either Pilkey or the plaintiff, Lockhart.    The tes-timony further tended to establish that about the third or fifth of October, 1893, five or seven days before the expiration of the ninety days within which they were required to do the work and record the notice, under the laws of the United States, Pil-key notified the plaintiff and Johnson that he would have noth-ing further to do with the property, and would abandon the contract which had been entered into, so far as he was con-cerned.    Under the testimony which was offered to the jury, and admitted by the court, both on behalf of the plaintiff and the defendants in the case, the question of the abandonment of the possession of the mine by the plaintiff was directly in issue.    The testimony offered, and the rulings of the court upon the testimony which was both admitted and rejected, show that this was the real issue to be submitted to the jury.

The question as to whether the testimony introduced and admitted by the court established the fact that the claim was discovered and taken possession of by the plaintiff and his co-tenants, Pilkey and Johnson, and as to whether the plaintiff continued in such possession until he was ousted therefrom by the defendants, or as to whether the plaintiff abandoned such possession, are questions of fact, which should have been deter-mined by the jury under proper instructions from the court. Where the testimony tends to the establishment of facts from

which the inference of abandonment or want of abandonment
may be drawn, then the jury, and not the court, must deter-
mine the facts, and draw the inference from the testimony
offered. Abandonment is a question of act, as well as intent,
and it is also said that it is a question of mixed law and fact.
See Oreamuno v. Mining Co., 1 Nev. 215; Weill v. Mining
Co., 11 Nev. 200. A party's own testimony that he had not
intended to abandon is not conclusive upon the jury. The
intention to abandon must be determined by the jury from all
the facts and circumstances in the case. Myers v. Spooner,
55 Cal. 257. Even though it might be shown that Pilkey had
repudiated the contract, and had, so far as he was concerned,
abandoned and given up the mine, and so notified his tenants
in common, Johnson and the plaintiff, yet the existence of this
fact alone would not necessarily be construed into an abandon-
ment of the property by the plaintiff. The plaintiff having
denied his abandonment and insisted upon his possession, the
question should have been submitted to the jury. My opinion,
therefore, is that it was error for the court, in the face of the
evidence admitted, to direct a verdict, and refuse to submit the
cause to a jury.

The next error assigned is the improper exclusion of cer-
tain evidence offered by the plaintiff. It was contended by
the plaintiff on the trial that, after the location of the mine,
and while the same was in possession of the
plaintiff, and before the time had expired
within which he might do the work, and file and
record the notice, and perfect his location, as
required by the United States statutes, Pilkey, the other ten-
ant in common with the plaintiff, entered into a fraudulent
conspiracy with one Fagaly and one Walker, and other de-
fendants, to obtain possession of the mine, and that, as a result
of this fraudulent collusion, Pilkey and the other defendants
ousted the plaintiff from the possession of the mine, and fraud-
ulently took and held, and still hold, possession thereof from
the plaintiff in support of this contention, the plaintiff, on
the trial, made and tendered the following offer of proof, as

EJECTMENT:
issues:
evidence:
competency.

found on pages 418 and 419 of the record:  "In connection with the witness John S. Neeland, now on the stand, we re-offer his testimony as taken before the court upon the case in chief of the plaintiff, and then rule out that evidence as taken by the stenographer, which is offered in rebuttal; and we also offer the testimony of Mrs. Stella A. Metz, George Blake, B. J. Lohman, and Mrs. Ellen Lockhart, offering to prove by said witnesses statements made at different times and places to the said witnesses by Frank Fagaly and Levi Walker, who are now dead, as well as statements of Charles Pilkey, who is now a defendant in this case, which statements of the said three parties, two of whom are now dead, were made prior to October 10, 1893, and the said statements were and are to the following effect:    That in September, 1893, ore was sent from the Sampson mine by Pilkey, who was then in charge of the Sampson mine for Henry Lockhart and Ben Johnson, to Levi Walker, which the said Walker had assayed; that thereupon, soon afterwards, the said Pilkey being in Albuquerque, and about the middle of September, the said Walker and Pilkey agreed to take Frank Fagaly into the scheme to obtain posses-sion of the said Sampson mine, and oust the said Henry Lock-hart and Ben Johnson therefrom; that it was then arranged by the three parties named, in the presence of some one or more of the above named witnesses, that the said Fagaly should ac-company the said Pilkey to the Sampson mine for the first time in the month of September, 1893, and did go into possession with the said Pilkey of the said mine, in pursuance of the ar-rangement and conspiracy aforesaid, did exercise acts of own-ership and possession, and take samples of ore from the said vein, with which he returned to Albuquerque; that thereupon assays were had of the said ore, so brought by Fagaly to Walker, and that soon after the return of said assay, which was about $2,600 to the ton, the said Pilkey came to Albuquerque October 2 or 3, 1893, and that it was then arranged that, in view of the large assay, it was necessary to speedily get back upon the Sampson claim, inasmuch as ninety days would elapse from its location on October 10th, and that on or about the

sixth or seventh of October the said Fagaly and the said Pilkey actually left Albuquerque with the express intention of taking actual possession of the said Sampson mine and did so actually, prior to October 10, 1893, resume the possession which had been begun when Fagaly first visited said mine in September, and from that taking of actual foot possession prior to October 10, 1893, they actually so held possession, and have continuously held it since," which offer was denied by the court, and the evidence rejected. The contention of the defendants was that there was no wrongful ouster of the plaintiff, but that at the time the defendants entered into possession of the mine, and located the same, and for a long time prior thereto, the mine had been wholly abandoned by the plaintiff and his associates, and therefore the possession and location by the defendants was rightful. The issue of fact, therefore, between the plaintiff and the defendants, as to the possession of the plaintiff, his wrongful ouster therefrom by the defendants, his abandonment of the mine, and their rightful possession and location thereof, were thus clearly and distinctly presented. Therefore, any competent testimony which would tend to establish any of these issues was clearly proper and should have gone to the jury. If the plaintiff was rightfully in possession of the mine, and seeking to hold it, and the time had not expired within which he was allowed to do the work and perfect his location, and if during this time the defendant wrongfully intruded upon his possession, and ousted him from the mine, then the plaintiff could not be charged with abandonment. Abandonment can not be charged against the locator of a claim if, while he is in possession, his claim has been seized by another, who holds the possession of it adversely to him. See Manufacturing Co. v. Dickert, 21 Pac. (Utah) 1002.

We can not state, from the condition of this record, and the nature of the objections made by the plaintiff in error to the evidence, just what portion of the testimony should have been excluded and what really admitted. The offer was probably much broader than would have been legally admissible. While the evidence as to the statements made by Fagaly and

Walker would not, probably, have been competent, yet their acts and conduct, which might tend to show that they, with Pilkey and the other defendants, wrongfully entered upon the possession of the plaintiff, and ousted him from the mine before the time had expired within which he could do the work, that is before the tenth of October, 1893, would be competent and admissible.

As to the evidence offered of the statement of Pilkey, he having located the mine in the name of himself, the plaintiff, and Johnson under the contract, and they all having been in possession of the same, his statements in relation to the possession of the mine by the plaintiff, or the abandonment thereof, and the formation and consummation of any plan by him and the defendants to take possession of the mine for the defendants, and oust the plaintiff therefrom, would be competent. Also the statements made by him, if any, contradictory of his evidence given, would be competent, if the foundation was laid for it.

The cause must be reversed and remanded for a new trial, and it is so ordered.

Smith, C. J., and Laughlin and Bantz, JJ., concur.