William L. Buchanan died as the result of coming into contact with an automobile belonging to and driven by Eugene Drillon. The accident occurred shortly before 2 o'clock on the afternoon of January 25, 1939. The scene was Bayou Road in New Orleans, about eighty to one hundred feet west of Broad Street.
The plaintiffs are Mrs. Rita Stansbury, the wife of the deceased, and Mrs. Audrey Theresa Henry, the divorced wife, who appears as natural tutrix on behalf of two minor children, Marion Louise, aged ten years, and Audrey Mae, aged nine years, issue of the marriage of deceased with his said former wife. The amounts prayed for are as follows: On behalf of the surviving wife, $10,000, and on behalf of the two minor children, $10,000.
The only defendant is Drillon, although, in answer to interrogatories propounded to him, he stated that he had obtained a public liability insurance policy from Motor Vehicle Casualty Company of Chicago, Illinois.
The charges of negligence are that Drillon was operating his automobile at an excessive speed of from thirty-five to forty miles per hour; that he "negligently and wantonly ran down said Buchanan, * *", and that "he was further and additionally careless, negligent and wanton in running into and killing said William L. Buchanan, in that said Eugene Drillon, having a full and unobstructed view of said Buchanan walking, first along the gutter curb of said street, thence in proceeding to walk across said street at a moderate pace, either failed to maintain a proper lookout, or (in the alternative) wantonly failed to regard Buchanan's life and safety, neither blowing his horn nor sounding other alarm, nor slowing down nor swerving into the ample space to his left afforded by a wide two-way street, and that said Drillon either discovered said Buchanan's peril and proceeded wantonly and struck and killed him, or, in the alternative, negligently failed to maintain a proper lookout and carelessly failed to keep his car under proper control".
Drillon, admitting the occurrence of the accident, denies any negligence on his part and particularly denies that he was operating his car at an excessive rate of speed and that he failed to maintain a proper lookout, and avers that, just as his automobile was passing alongside two or more taxicabs, which were parked to his right and adjoining the curb of the street, Buchanan, emerging from the obscurity provided by the two parked cabs, "quickly ran forward a few steps and ran directly into the right side of respondent's car near the forward portion of the body proper". Drillon further averred "that at no time prior to the accident was the said Buchanan in front of respondent's car or within the sector subtended by the normal angle of vision of a driver looking to the front while driving in traffic". And in the alternative that it appear that he was negligent in any way, Drillon averred that the proximate cause of the accident *Page 663 
was the contributory negligence of Buchanan himself.
There was judgment for defendant and plaintiffs have appealed.
The spot at which the accident occurred is about eight or ten feet from the lower curb of Bayou Road and about eighty to one hundred feet from the corner of that street and Broad Street. Broad Street is a wide thoroughfare, having two driveways and a neutral ground, and Bayou Road is a street of ordinary width, on which traffic proceeds in both directions. On a post on the curb of Bayou Road, about eighty feet from the corner of Broad Street, the Toye Brothers Yellow Cab Company maintains a telephone, so that its chauffeurs on the stand at that curb may receive calls from the main office. Waiting at that stand were two taxicabs. They were facing towards the West, which was the direction in which Drillon was driving his car. He had driven down Broad Street, had turned to his left across the other driveway of that street, and had entered Bayou Road, so that, as he passed the two taxicabs, they were alongside the curb and to his right. Buchanan was a taxicab driver, but his cab was not one of those on that side of Bayou Road. He had parked it on the other side of the street, a distance of from forty to sixty feet farther from Broad Street than was the telephone. He had left his cab on the other side of the street and had come over on foot in order to make use of the telephone. After using it he was making his way back across Bayou Road to his taxicab when the accident took place.
There is involved only one question and that one of fact: Could Drillon, had he been on the alert, have seen Buchanan and appreciated his danger in time to have avoided an accident, or did Buchanan emerge suddenly from the obscurity afforded by the parked taxicabs and walk out into the street when it was no longer possible for Drillon to have avoided him?
That Buchanan was negligent in walking into the street without looking for approaching vehicles is obvious, and for many years it was well established in this state that, under such circumstances, there could be no recovery by or on behalf of such a negligent pedestrian. But, in Rottman v. Beverly, 183 La. 947,165 So. 153, and in Jackson v. Cook, 189 La. 860, 181 So. 195, the Supreme Court has established a doctrine under which it is now held that, regardless of the negligence of a pedestrian in going into a dangerous position without looking and regardless of the continuing negligence of such a pedestrian in remaining in such a dangerous position, there may be recovery for injuries sustained if an automobile driver saw, or should have seen, the danger of the pedestrian, and should have realized the peril and yet failed to do all that was reasonably possible to avoid striking the said pedestrian.
The district judge, in his reasons for judgment, evidenced a full understanding of this so-called doctrine of "discovered peril" and held that the facts shown by the record did not justify the application of that doctrine; that, in fact, there was no opportunity for defendant to avoid the accident.
The evidence on some of the questions of fact is conflicting and it would serve no useful purpose to quote from the testimony of the various witnesses. Let it suffice that we say that the witnesses are about equal in number and that those for the plaintiff vehemently declare that the speed of Drillon's automobile was from thirty-five to forty miles per hour, whereas the witnesses for defendant are equally certain that the speed of his car at the time of the occurrence was only twelve or fifteen miles per hour. Likewise, plaintiff's witnesses assert that after the occurrence of the accident Drillon's car proceeded some sixty or seventy feet, whereas the witnesses for the defendant all state that it stopped immediately and did not proceed more than one-half to one car length. Most of the witnesses for defendant were related to him and were in his automobile, one being his sister, one his wife and one his father-in-law, so that, to some extent, it may be said that they were interested. Of the witnesses for plaintiffs, two were brother taxicab drivers of the deceased who were sitting in the front seat of the first of the parked taxicabs alongside which the Drillon car passed, and all that we have to say in criticism of their testimony is that they claim to have seen considerably more than would have been possible since their backs were turned to the direction from which the Drillon car approached. It further appears that both made statements to the police shortly after the occurrence of the accident and that the versions given by both in these statements were considerably more favorable to the defendant than was the testimony given by them on the trial of the case. *Page 664 
The contention of the plaintiffs is that, when Buchanan completed the telephone call he made at the telephone alongside the first of the parked taxicabs, he turned to return to his cab on the other side of the street, and that, since his cab was a considerable distance farther from Broad Street than was the telephone, it was necessary for him to cross the street at an angle, or to proceed along the curb of Bayou Road for some distance and then directly cross it. And plaintiffs maintain that he did this, proceeding thirty or more feet along the curb of Bayou Road and then attempting to cross that street when there was no obstruction whatever which might have prevented Drillon from seeing him.
Drillon, on the other hand, maintains that Buchanan started into Bayou Road immediately in front of the first of the parked taxicabs; that he was so near to it that he was completely obscured by it and that he walked into the side of Drillon's car and not in front of it. He sustained no injury at all except to the left temple and the only mark on the automobile, which would have indicated impact with Buchanan, was located near the windshield on the right side of the car. In other words, it seems probable that Buchanan's head struck the car near the windshield. It is quite certain that, if the bumper of the car had struck him, there would have been injury to his legs and that probably some mark would have appeared on the fender of the automobile, and these facts seem to bear out the theory of Drillon that Buchanan walked or ran into the side of the car and at no time was in front of it.
We have considered all of the contradictory statements of the various witnesses and have reached the conclusion, as did the district judge, that the evidence does not justify a holding that even the most alert driver, had he been placed in Drillon's position, could have avoided the accident. Our brother below said:
"Considering the physical circumstances of the case, as well as all of the facts and circumstances developed in the trial, this court cannot declare that the defendant carelessly and negligently drove his automobile as alleged in Article 2 of the plaintiff's petition."
We quote further from the opinion of the district judge:
"There were two theories developed in this case as to the manner in which the accident happened. In considering these theories, the Court believes that physical facts are stronger than the ordinary facts developed from witnesses. The coroner's autopsy discloses that the defendant was hurt on the head. It did not disclose any bruise or marks upon his body where a bumper or a fender of the automobile could have struck the deceased.
"The plaintiff's theory is that the front part of the car, either the bumper or the fender, struck the plaintiff, knocked him in the air, and in some unaccountable way, he fell to the ground and met his death. The defendant's theory is that the plaintiff suddenly walked out, and in walking and going towards his cab, he suddenly came out from before a parked yellow cab near the telephone post; and, that the interval of time was so short that the defendant could not stop his automobile.
"The physical facts which support the latter theory are that the defendant had no marks upon his body where an automobile could have struck him, near the legs or somewhere near the arms; and, there was an indentation in the end of the windshield, which would show that part of the automobile had first passed the defendant before he stepped in the direction of this windshield.
"Considering the doctrine of law as to discovered peril, from the facts developed, it is not reasonably certain that the defendant had time to discover the deceased, or that the defendant could have averted the accident."
The conclusion of the district judge was as follows:
"The court cannot find that the plaintiffs have shown that this defendant was in any way careless or negligent in the operation of his automobile, nor, can it find that the physical facts substantiate or corroborate their theory of the case, and therefore, there will be judgment dismissing the plaintiffs' demands."
Surely, we cannot say from this record that this conclusion was manifestly erroneous.
The judgment appealed from is affirmed.
Affirmed. *Page 665