Emile Muller, 64 years of age, a pedestrian, was injured when, shortly after dark, on December 22d 1937, he was struck by an automobile operated by Charles Phillips, Jr. The accident occurred near a settlement or subdivision known as Bridgedale on what is referred to in the record as the old Air Line Highway. Bridgedale is a few miles out of the City of New Orleans on the road towards Kenner. Muller was walking in the direction from New Orleans to Kenner and Phillips was driving his car in the opposite direction towards New Orleans. There were two trucks going in the direction in which Muller was walking and they were behind him until just before the accident occurred. The first of these trucks was driven by Rosario Tramontana and the second by Salvadore Tramontana.
Muller brought this suit for damages against Phillips and Rosario Tramontana, alleging that both were negligent and that the negligence of the two caused the accident. Later he amended his petition and alleged that Rosario Tramontana was a *Page 444 
minor and was the son of Joseph or Guiseppe Tramontana, and that judgment should be rendered against the said Guiseppe Tramontana "as administrator of the estate of his minor son."
The burden of plaintiff's complaint is, in effect, that Phillips was operating his car at too high a rate of speed; that he was not maintaining a proper lookout ahead, and that as he, plaintiff, was walking along the shoulder on the river side of the highway, Phillips suddenly swerved his automobile to his right and struck him, plaintiff, and knocked him into the ditch alongside the road; that Tramontana was at fault in that he was driving the truck in the opposite direction and at a high rate of speed, which plaintiff fixes at 50 miles per hour, and in not according to Phillips "his clear one-half of the highway for at least 200 feet" as required by Section 3, Rule 6 of Act No. 21 of 1932. Plaintiff alleges that it was because of this negligence on the part of Tramontana that Phillips swerved to avoid contact with the truck, and, passing beyond the edge of the paved portion of the road, struck Muller, who would otherwise have been perfectly safe in his position on the shoulder.
The Board of Administrators of the Charity Hospital at New Orleans intervened and claimed of defendant $769 and attorney's fees, alleging that to be the cost of services rendered to Muller as a result of the said accident.
An exception of no cause of action filed by Tramontana was overruled and all the defendants filed answers.
Phillips denied that Muller had been walking along the south or river side of the highway, and especially denied that he, Phillips, had swerved his car to the right and had struck Muller while he was on the shoulder of the road. He averred that as he was operating his car at a moderate rate of speed — about 20 miles an hour and on the south or river half of the road — Muller "darted across the highway from the opposite or left side * * * and got in front of respondent's car in such a manner that it was too late for respondent to check the progress of his automobile to avoid striking said plaintiff." Phillips also alleged "that when seen by respondent, plaintiff was too close to respondent's car for your respondent to check the progress of his automobile."
In the alternative, Phillips pleaded that if any fault should be found in him, the true cause of the accident was the contributory negligence of Muller, himself.
Tramontana answered denying any negligence whatever, and averred that Phillips' car and the Tramontana truck were going in opposite directions, each at a speed of 20 to 25 miles an hour, and that Muller was walking along the north or lake side of the highway "in the direction of New Orleans" and was in a safe place "when suddenly and without warning * * * the said Muller decided to run across the highway; that he ran across the highway in front of defendant's truck when defendant was 75 or 100 feet from him, and ran directly into the path * * *" of Phillips' automobile. Tramontana also, in the alternative, pleaded the contributory negligence of Muller.
The case was tried below and the exception of no cause of action of Tramontana was renewed. The district court at that time maintained the exception and dismissed the suit as to Tramontana, and counsel for plaintiff now concedes that the evidence did not make out a case against Tramontana.
After a trial there was judgment in favor of Phillips, dismissing plaintiff's suit, and plaintiff has appealed. While counsel for plaintiff still maintains that the accident occurred as alleged in plaintiff's petition, they assert further that, even if the facts are as contended by defendant, that is, that even if Muller was at first on the lake side of the road and attempted to cross in front of the Phillips' car, nevertheless there should be a judgment in favor of Muller because he must have been in the road and in full view of Phillips for a sufficient time to have afforded ample opportunity for Phillips to see him in spite of any negligence of Muller in getting into a position of danger on the highway. This argument is based on the doctrine followed by our Supreme Court in Rottman v. Beverly et al., 183 La. 947, 165 So. 153
156, in which that court said: "* * * if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. * * *" Counsel further argue that even if Phillips did not see Muller in time to avoid striking him, he is, nevertheless, liable because the Supreme *Page 445 
Court in Jackson v. Cook, 189 La. 860, 181 So. 195, extended the doctrine of the Rottman case so as to make liable a defendant who may not have seen the plaintiff but who ought to have seen him.
In the first place we think that the allegations in Tramontana's answer and the statement of Tramontana that Muller was walking towards New Orleans were unintentionally erroneously made. It is very evident that Muller was not walking towards New Orleans but in the other direction. Muller lived on the north or lake side of the road and only a short distance beyond the point at which he was struck. He states most positively that he had walked along the shoulder on the other side of the highway and had not yet crossed to the side on which he lived. His counsel say that he is familiar with the legal requirements that pedestrians must walk along the left side of the highway in order to face oncoming vehicular traffic, and they argue also that since he lived on the north side of the road, if he had been on that side all of the time he surely would have remained there for the short additional distance required to reach his home, and would not have crossed at that point only to recross on reaching the point opposite his home. Counsel say, too, that since after the accident he was found in the ditch on the south side of the road, he must have been on that side when struck and that the momentum of the automobile was what knocked him into that ditch, since, as counsel put it, he had no momentum of his own.
We find no fault with the logic of either of these arguments and yet the testimony of the witnesses to the contrary is overwhelming.
Phillips admits that he did not see Muller until just before his car "tapped" him and that even then he did not know that what he had seen was a man. He says that it seemed to him that what he saw "darted" in front of him going in the direction from his left to his right, and that he instinctively swerved slightly to his left, as he felt that possibly he could pass it on that side, but that, whatever it was, it seemed to him to hit his right front fender and bounce over it. The record convinces us that after the impact, Phillips' car stopped with its left front wheel slightly to the left of the center of the road. It follows that when the impact occurred the car was not swerving off the road to the right but that it had swerved in exactly the other direction.
The driver of the first truck says that Muller had been walking along the north side of the road and that he crossed to the other side in front of his truck and in front of the Phillips' car.
A Mrs. Leader, who lived about 75 feet from the scene of the accident, says that she saw Muller walking from the north side to the south side and directly into the path of the Phillips' car. It is true that astute counsel in cross-examination almost persuaded Mrs. Leader to say that when she first saw Muller he was already across the road but she refused to be led into making such a statement and insisted that when she first saw him he may have been "somewhat, not much" across the road, but she was certain that he had gone from the north side to the south side.
Behind the first Tramontana truck was another driven by Salvadore Tramontana, who says that his truck was "about 15 feet behind the first one" and that when he first saw Muller "he was more towards the middle of the road", but his testimony shows plainly that Muller was moving towards the river side. When he first saw Muller he was "even with the back" of the first truck. We think it clear then that Muller passed in front of the first truck and that as he cleared it the driver of the second truck saw him and that almost instantly he was struck by the Phillips' car.
There is no doubt that none of the vehicles was going fast. The road was narrow and rough, although paved, and it is shown that Phillips stopped within a few feet of the point of impact.
[1] We conclude that the fact is that Muller was walking along the north shoulder of the road as the two trucks approached from his rear and as Phillips' car, going in the other direction, also approached the spot at which the accident took place, and that just before the first of the two trucks reached him, for some unknown reason, he decided to cross the road and started to do so, passing in front of the first truck and unexpectedly placing himself in front of the Phillips' car. The allegations of the petition do not set forth the true facts, but the important question is whether under the true facts Phillips should have discovered the peril of plaintiff in time and whether he should have stopped his car before striking him. The *Page 446 
mere fact that the plaintiff may have been negligent in leaving his position of safety on the shoulder of the road and in attempting to cross in front of the oncoming automobile would not deprive him of his right to recover if after his peril became apparent there yet remained an opportunity for Phillips, had he been exercising due care, to avoid the accident. See Rottman v. Beverly et al., supra, and Jackson v. Cook, supra.
[2] Counsel for plaintiff contend that it is obvious that Phillips should have seen Muller in ample time, and that if he could not have done so because of defective headlights, then he was at fault because Act No. 21 of 1932, Sec. 9, subdivision (g) 1, requires that: "Every vehicle operated upon a public road, highway or bridge in this State, during the period of one-half (1/2) hour after sunset to one-half (1/2) hour before sunrise, and at any other time when there is not sufficient light to render clearly discernable any person on the highway for a distance of two hundred (200) feet ahead, * * *."
In Louisiana Power Light Co. v. Saia, 188 La. 358,177 So. 238, 239, the Supreme Court, referring to this requirement, said: "In applying this provision of the statute, the courts have concluded that a motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision."
In many cases it has been held to be negligence to operate a motor vehicle at night at a speed so great as to render it impossible for it to be stopped within the distance illuminated by its lights, but in each of those cases there were no strange or unusual circumstances such as there are in the case at bar. Here there were two trucks going in one direction and Phillips' automobile going in the opposite direction. Muller, as it has been said, was walking along the shoulder of the road to the left of Phillips and was beyond the beams of the other headlights. If a motorist is driving in one direction on his right hand side and other vehicles are going in the other direction on the other side of the road, the first motorist cannot see through the beams of other headlights and discover unexpected objects on the other side of the road. Of course, when Muller was still some distance ahead of the leading truck, its beams would have illuminated him and he could have been seen by Phillips, but at that time there was no reason for Phillips to notice him because he naturally had no reason whatever to anticipate that Muller would attempt to cross the road.
When Muller left the shoulder of the road and crossed in front of the first of the trucks he was illuminated by the light of that truck, but at that time the Phillips' car must have been very close upon him because it struck him before he had completed the crossing of the very narrow road. The rule which was followed in the Saia case is not adamant and will yield when circumstances show that to apply it will require of a motorist much greater care than is required by reasonable prudence. In Woodley Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469, 470, the Supreme Court, in referring to the suggestion that under all conditions an automobile must be operated at a speed which will permit of its being stopped within range of its lights, said: "* * * Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject. * * *" And in Hanno v. Motor Freight Lines, Inc., 17 La. App. 62, 134 So. 317, 319, the Court of Appeal for the First Circuit, referring to this rule, said: "* * * we are of the opinion that its application depends entirely on the facts and circumstances arising in each case. * * *"
Phillips had no reason whatever to anticipate that there was a man walking on the shoulder of the road to his left; that that man would, unexpectedly and without cause, suddenly walk, or possibly run, across the road ahead of an oncoming truck and in front of his car.
Counsel for plaintiff insists that Muller moved very slowly. We doubt this. While the witnesses do not agree as to his speed, some use the word "walk", some the word "staggered", and Phillips, in one place, used the word "ran." We think it very evident that he must have hurried to some extent. Surely he saw the automobile coming and surely he knew that it was dangerous to cross, and it is inconceivable that under those circumstances he walked out into the road slowly and, for any appreciable *Page 447 
time, exposed himself to the danger which was open and apparent. The record convinces us that Phillips did all that was reasonably possible under the circumstances, and that the accident was due solely to the negligence of Muller.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.
Affirmed.