259 P.2d 346

### SANCHEZ v. GOMEZ.
No. 5565.

Supreme Court of New Mexico.

July 7, 1953.

Edwin L. Felter, Santa Fe, for appellant.

F. A. Catron and Thomas B. Catron III, Santa Fe, for appellee.

COORS, Justice.

The basic question before the court in this cause is whether the trial court erred in instructing the jury to find the issues of fact for the defendant and against the plaintiff. Whether the court's directed verdict was proper depends upon whether any evidence was introduced on which a jury could reasonably have found for the plaintiff-appellant and against the defendant-appellee under a theory of last clear chance, and possibly also, upon which a jury might reasonably have found against the defendant and for the plaintiff upon the question of contributory negligence.

An action was brought to recover for injuries, loss of pay, and doctor bills as a result of being struck by a taxicab driven by one of defendant's employees when plaintiff was attempting to cross from the south side of Water Street to the north side of the street in Santa Fe, at a point approximately 75 feet west of the west side of Galisteo Street. Plaintiff's conduct in crossing the street at a point other than a regular pedestrian crosswalk constituted a violation of Section 3-109(1) of the Ordinances of the City of Santa Fe, which provides:

"Crossing Streets.—Pedestrians shall cross streets at a right angle at street intersection or designated crossings and at no other place. Where a traffic officer is stationed, pedestrians shall cross with the released traffic."

Plaintiff also was in at least technical violation of the right of way provisions of the state statutes and of the ordinances. Section 68-518, New Mexico Statutes, 1941 Compilation, in the last sentence of subsection (c), provides:

"(c) * * * Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, cross-walk or intersection shall yield the right of way to vehicles upon the highway."

This same provision appears as item (iii) of Section 3-105, subsection (5), paragraph (B) of the Ordinances of the City of Santa Fe in these words:

"* * * Every pedestrian crossing a street within a business or residence district at any point other than a pedestrian crossing, or cross-walk, or intersection shall yield the right-of-way to vehicles upon the street."

Defendant's taxi apparently turned out of its stall into Water Street to answer a call at a point east of the Galisteo intersection, then turned straight west toward the intersection. In connection with the driver's operation of the vehicle parts of two sections of the city ordinances need to be considered. Section 3-102(A) reads:

"Any person driving a vehicle on a street shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the street and of any other condi-

tions then existing; and no person shall drive any vehicle upon a street at such speed as to endanger the life, limb or property of any person."

Subdivision (B) of Section 3–102(1) provides:

"Subject to the provisions of subdivision (A) of this section and except in those instances where a lower speed is specified in this article, it shall be prima facie lawful for a driver of a vehicle to drive the same at a speed not exceeding the following, but in any case when such speed would be unsafe, it shall not be lawful.

"V. (Being Sec. 241 of the 1930 Code of Ordinance of the City of Santa Fe.)

"20 miles an hour in a business district as defined herein;"

Section 3–115 of the Ordinances provides in part as follows:

"The City Council may create and provide for the designation of, by erection of appropriate signs or signals such traffic signals, stop streets, through highways and, one-way streets as it may deem necessary or expedient. * * *"

In accordance with the foregoing provision the city had installed a mechanically operated stop and go signal at the Galisteo and Water Streets intersection. Section 3–

117 of the city ordinance provides punishment for the driver of any vehicle who is convicted of failing to stop at a duly marked stop-sign or traffic light.

Defendant's driver in proceeding across Galisteo while the stop and go signal showed red, was in violation of the ordinance and there is some evidence in the record tending to show that the taxicab was proceeding at a speed greater than 25 miles an hour and greater than might be found reasonable and proper under the circumstances.

At the moment plaintiff was about to cross Water Street several eastbound cars were stopped behind the Galisteo Street intersection on the south side of Water Street, the signal being on red. Plaintiff's testimony was to the effect that she had a clear line of vision between the point from which she left the sidewalk on the south side of Water Street and the taxicab which was approaching the intersection on the north side of the street east of the intersection. Presuming that the taxi would stop for the red light, plaintiff felt she would have enough time to cross the street and started across. Defendant's taxicab did not stop for the red signal, however, but proceeded in a westerly direction at a rate of speed which was testified to by various witnesses. Their estimates ranged from around 20 to 30 miles an hour. When plaintiff reached a point somewhere near the middle of the street she realized her

peril, started to run, and was hit. There is testimony to the effect that the taxidriver did not see plaintiff until it was too late to avert the accident, and skid marks, measuring 26 feet, indicated, according to the testimony of Capt. A. B. Martinez of the police force, that the driver was about 47 feet from plaintiff before he became aware of the plaintiff's position of danger.

▮ It is now well established that before the trial court may properly remove a case from the jury it should appear that no true issues of fact have been presented, for it is a party's right to have such issues decided by the judgment of his peers under provisions of state and federal constitution. The basis for a directed verdict, therefore, is the absence of an issue for a jury to resolve. It follows that when the evidence forms an issue the right to a jury determination persists. It is to safeguard this basic right of jury determination that the rule arose, and frequently announced by the court, that when a verdict is directed because a contrary result would be without support in the evidence, the court must view the evidence in the light most favorable to the party against whom it rules; in other words, it must indulge all reasonable inferences that may be drawn from the evidence in favor of such party. This is so because the jury may feel and agree among themselves that it is this evidence and this evidence alone that is to be believed and that, therefore, all the evidence

which was presented favoring the position of the adverse party is erroneous, false, or otherwise ineffective. It is in accordance with this principle that the question of whether a pedestrian who negligently crosses a street in the middle of the block should recover for injuries sustained when struck by a taxicab was held a question for the jury under the last clear chance doctrine in Center v. Yellow Cab Co. of Los Angeles, 1932, 216 Cal. 205, 13 P.2d 918, a case which is in many respects identical with the one at bar.

In the instant case one of the most controverted issues of fact appears to have been whether the taxicab driver had a clear line of vision to the point on Water Street at which the plaintiff attempted her unfortunate crossing. If he did have such a clear line of vision, a jury could have found that he should have seen and recognized plaintiff's peril in time to have averted the accident and under those circumstances the doctrine of last clear chance might have become applicable. On the other hand, if his line of vision was obscured and he did not have an opportunity to see the plaintiff until she reached a point well out into the street, the negligence of the driver and that of the plaintiff might well have been found to be substantially concurrent so that plaintiff's contributory negligence would bar recovery.

Reference to the record discloses at least some testimony which tends to establish

that the taxicab had a clear line of vision in plaintiff's direction.

Plaintiff, Mabel Sanchez, testified as follows:

"Q. Now, did you have a clear vision of this taxicab at that time? A. I certainly did. I had a clear vision, that was the only car coming at the time.

"Q. Now, what part of the taxicab were you able to see from where you were then standing? A. I saw a clear vision of the cab.

"Q. What part of the cab did you see? A. All the front and all one side.

"Q. Were you able to see the wheels on that taxicab? A. Yes.

"Q. Were you able to see the windshield? A. Yes, sir. * * *

"Q. Were you able to see the position in which the driver of the taxicab was sitting? A. Yes.

"Q. Were there any other cars in your line of vision, between you and the taxicab? A. There was (were?) no other cars.

"Q. Were there any pedestrians or people between you and the taxicab and your line of vision? A. No, sir.

"Q. Were there any objects between you and the taxicab, in your line of vision? A. No, sir, I could see a clear

vision of the car, that's how come I knew it was a taxi."

Fernando Mier, who investigated the accident in question immediately after it happened, testified that there were no unusual factors of weather, time of day or road conditions to create an obstructed view. Efforts to establish the fact that any particular number of eastbound cars were backed up behind the stop and go signal waiting for the light to change proved unsuccessful since none of the witnesses was able to state with certainty whether there were one, two, three or more cars ahead of the car driven by Billy J. Evans, from which the plaintiff alighted.

With evidence such as this in the record, a jury might and reasonably could find that the last clear chance doctrine had application. Bence v. Teddy's Taxi, 1931, 112 Cal. App. 636, 297 P. 128; Boaze v. Windridge & Handy, 1939, 70 App.D.C. 24, 102 F.2d 628; Heskamp v. Bradshaw's Adm'r, 1943, 294 Ky. 618, 172 S.W.2d 447; Hantel v. Service Drayage Co., La.App.1938, 177 So. 425; Langley v. Viguerie, La.App.1939, 189 So. 606; Stansbury v. Drillon, La.App.1941, 2 So.2d 662; Muller v. Phillips, La.App. 1945, 20 So.2d 443; Blunk v. Snider, 1937, 342 Mo. 26, 111 S.W.2d 163; Melenson v. Howell, 1939, 344 Mo. 1137, 130 S.W.2d 555.

In Floeck v. Hoover, 1948, 52 N.M. 193, 195 P.2d 86, 87, this court set out the

factual matters which should appear so as to present an issue of last clear chance, as follows:

"* * * It must appear, (1) that plaintiff has been negligent, (2) that as a result of his negligence he is in a position of peril from which he cannot escape by the exercise of ordinary care, (3) that the defendant knows or should have known of plaintiff's peril, and (4) that defendant then had a clear chance, by the exercise of ordinary care, to avoid the injury, and that he failed to do so."

Let us survey the facts of the case at bar in the light of these requirements. That plaintiff has been negligent is admitted. That as a result of this negligence plaintiff was in a position of peril from which she could not escape could be logically concluded from the fact that she tried to escape by accelerating her speed when she discovered her peril, but succeeded only in being hit. Whether defendant's taxi-driver knew or should have known of plaintiff's peril in time to have avoided the accident is controverted, but since there is evidence from which the jury could have found either that the driver did or did not have a timely opportunity to have known of plaintiff's peril, those facts for the purpose of determining whether the issue of fact should or should not be taken from the jury must be resolved in plaintiff's favor. The jury could have found that the driver knew or should have known of plaintiff's peril had he been keeping a proper lookout. Finally, a jury could have found that if the taxicab had stopped for the red light as plaintiff had a right to expect, its advance and speed would have been so far reduced that the driver could (1) either have averted the accident by stopping the car before striking the plaintiff, or (2) that plaintiff would then have progressed across the street to such a distance that he could have missed striking her by swerving to the left, since the evidence shows that no other traffic was coming from the west.

Just as determination of the fact whether there was contributory negligence is for the jury, as was held in Russell v. Davis, 1934, 38 N.M. 533, 37 P.2d 536, the determination as to whether the facts permit application of the doctrine of last clear chance, once it is found that negligence on plaintiff's part existed, is likewise to be resolved by the jury under appropriate instructions. In either case it is only when the facts are such that all reasonable men must draw the same conclusion, that the question presented by them is one of law for the courts, thus authorizing a directed verdict. The evidence in this case was not such as to enable the court to say as a matter of law that the taxicab driver did not have a last clear chance to avoid the accident. Lopez v. Townsend, 1938, 42 N. M. 601, 82 P.2d 921. The mere fact, also, that plaintiff violated a city ordinance by

crossing the street elsewhere than at an intersection would not prevent a recovery under the last clear chance doctrine. Mansperger v. Ehrnfield, 1937, 59 Ohio App. 74, 17 N.E.2d 271.

It is only when there is no evidence for the jury to pass upon, or when the evidence is of such character that the court in the exercise of its sound judicial discretion, would be called upon to set aside the verdict and grant a new trial if the jury found in favor of one side rather than the other, that it is the right and duty of the judge to direct the jury to find according to the views of the court. The early case of Gildersleeve v. Atkinson, 1891, 6 N.M. 250, 27 P. 477 is an apt case illustrating this principle. The sum of $10,118.60 was claimed by petitioner as due from a decedent's estate. Of this amount $118.60 was due on account of cash loaned and the liability therefor was admitted. The remaining $10,000 was claimed as a balance due on the purchase price and interest for land deeded to the decedent. The only evidence supporting the claim for $10,000, however, was plaintiff's own testimony which, not being corroborated, under Section 2082 of Compiled Laws 1884 could not go to the jury. Under these circumstances the court held, there was nothing for the jury to pass upon and the trial court properly directed them to find their verdict for the defendant. In the case at bar the jury obviously may or may not evaluate the testimony of the plaintiff as sufficient to outweigh other evidence to the contrary, but it is competent evidence for the jury to consider along with the other testimony in the case and the situation, therefore, is markedly different from that in Gildersleeve v. Atkinson.

In Lockhart v. Wills, 1897, 9 N.M. 263, 50 P. 318, 320, on the other hand, the court directed a verdict at the instance of the defendants, in defendants' favor. The specific question in issue there was whether plaintiff had or had not abandoned a mining claim from which he had been ousted by the defendants. Plaintiff had testified to the effect that he had not intended to abandon. Testimony on behalf of defendant that no assessment work was done by plaintiff, that no ten-foot hole was sunk, that the claim was not monumented as required by law and that one of plaintiff's cotenants had abandoned his contract with plaintiff for prospecting the land all tended to show that plaintiff had abandoned the claim. The Territorial Supreme Court, holding nevertheless that the trial court had erred in directing the verdict, said:

"* * * Where the testimony tends to the establishment of facts from which the inference of abandonment or want of abandonment may be drawn, then the jury, and not the court, must determine the facts, and draw the inference from the testimony offered. Abandonment is a question of act, as

well as intent, and it is also said that it is a question of mixed law and fact. (Citing cases.) A party's own testimony that he had not intended to abandon is not conclusive upon the jury. The intention to abandon must be determined by the jury from all the facts and circumstances in the case. Myers v. Spooner, 55 Cal. 257. Even though it might be shown that Pilkey had repudiated the contract, and had, so far as he was concerned, abandoned and given up the mine, and so notified his tenants in common, Johnson and the plaintiff, yet the existence of this fact alone would not necessarily be construed into an abandonment of the property by the plaintiff. The plaintiff having denied his abandonment and insisted upon his possession, the question should have been submitted to the jury. * * *"

The issue presented in the above case is clearly analogous to that in the case at bar and we believe, fully illustrates that a directed verdict was not proper.

The United States Supreme Court, too, has long been thinking along these same lines. In Richardson v. City of Boston, 1856, 19 How. 263, 60 U.S. 263 at pages 268–269, 15 L.Ed. 639, Grier, J. stated: " * * * If there be 'no evidence whatever,' as in the case of Parks v. Ross, 11 How. [362] 393, 8, 13 L.Ed.

730, to prove the averments of the declaration, it is the duty of the court to give such peremptory instruction. But if there be *some* evidence tending to support the averment, its value must be submitted to the jury with proper instructions from the court. * * *"

The all important consideration is that a party has the constitutional right to have controverted questions of fact settled by the jury. In Slocum v. New York Life Insurance Co., 1913, 228 U.S. 364, 33 S.Ct. 523, 536, 57 L.Ed. 879, the U. S. Supreme Court summed up the situation in this way:

" * * * (a) that we must look to the common law for a definition of the nature and extent of the right of trial by jury which the Constitution declares 'shall be preserved;' (b) that the right so preserved is the right to have the issues of fact presented by the pleadings tried by a jury of twelve, under the direction and superintendence of the court; (c) that the rendition of a verdict is of the substance of the right, because to dispense with a verdict is to eliminate the jury, which is no less a part of the tribunal charged with the trial than is the court * * *"

It will be observed that according to this statement the constitutional right to jury trial there involved was to have the issues of fact presented by the pleadings

tried by a jury of twelve. The issues of fact, of course, may be formed in two ways: (1) by the pleadings and (2) by the evidence. In the former situation, the right is only provisional and if the evidence fails to form an issue of fact, the right to jury trial disappears. In the case at bar the issues of fact were formed by the evidence. Defendant's motion for a directed verdict, though denied at the close of the plaintiff's case, was granted after defendant's evidence was in. Any facts which were in issue under the evidence should have gone to the jury for determination. Blume, Origin and Development of the Directed Verdict, 48 Mich.Law Rev. 555(1950).

In conclusion we wish to re-emphasize that where the evidence is as controverted as it is in the case at bar, even though, to the presiding judge, the possibility of a recovery by the plaintiff may appear remote and even though the court may be motivated in its action in directing the verdict by a sincere desire to spare the plaintiff from the further and additional expense which more prolonged proceedings may entail, the party aggrieved may not in such manner be deprived of a jury determination. The case should have been submitted to the jury under the doctrine of last clear chance.

The decision of the trial court, directing verdict for the defendant is reversed, and the case remanded with instructions that it be reset for trial by jury. The costs of this appeal are assessed against the defendant pursuant to whose motion for a directed verdict the error in the proceedings has arisen. Secs. 19–101(54) (d), 19–201(22) (1), N.M.Stats.Ann., 1941 Comp.; Gallup Electric Co. v. Pacific Improvement Co., 1911, 16 N.M. 279, 117 P. 845.

It is so ordered.

SADLER, C. J., and COMPTON and LUJAN, JJ., concur.

McGHEE, J., not participating.