[No. 31358. *En Banc.* November 14, 1950.]

JACOB F. SARCHETT, *Appellant*, v. FRANK B. FIDLER et al., *Respondents.*[1]

[1]Reported in 223 P. (2d) 843.

*George Guttormsen* and *Jack P. Scholfield*, for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frederick V. Betts*, for respondents.

BEALS, J.—Bothell highway is a four-lane paved road, forty feet in width, running generally east and west at the point here in question. At about two o'clock in the afternoon, September 23, 1948, the plaintiff, Jacob F. Sarchett, parked his car twenty or thirty feet south of the highway, a short distance east of its intersection with Glenwood avenue in Bothell. His purpose in stopping was to visit a real-estate office a few feet south of the highway, but, finding that office closed, he started on foot across the highway, walking at a considerable angle toward the east, intending to visit a real-estate office on the north side of the highway, that office being some distance to the east of where he had parked his car. There was no indicated pedestrian crossing at this point.

Defendant Frank B. Fidler was driving east on the highway along the outside (southerly) lane, and, seeing the plaintiff proceeding across the highway, with his back toward the Fidler car, sounded the horn, moderated the speed of his car, changed to the inside lane of the southerly half of the highway, and, having reason to think that plaintiff was aware of his approach, continued on his way.

The car struck Mr. Sarchett when he was near the center of the highway and, as a result of the collision, the plaintiff was seriously injured and instituted this action for the pur-

pose of recovering damages from the defendant, alleging in his complaint that the defendant had been guilty of negligence in not keeping proper observation of the highway, in driving at an excessive speed, and "in failing to exercise due care under the circumstances existing at the point of operation."

By his answer, the defendant admitted that his car had struck the plaintiff, denied any negligence on his part, and pleaded affirmatively that the injuries which the plaintiff sustained were the result of plaintiff's own negligence, namely, in walking across a public highway at a point other than a pedestrian crosswalk or an intersection, in crossing the highway in the face of vehicular traffic while under the influence of intoxicating liquor, in failing to keep a lookout for vehicular traffic, and in walking directly into the path of defendant's car, after the defendant driver had sounded the horn and after the plaintiff knew or should have known of the presence of defendant's automobile.

By his reply, plaintiff denied any negligence on his part.

The action was tried to a jury, which returned a verdict in favor of the defendant and, from a judgment entered upon this verdict, after the denial of plaintiff's motion for judgment in his favor notwithstanding the verdict or, in the alternative, for a new trial, the plaintiff has appealed.

Appellant assigns error (1) upon the refusal of the trial court to give his requested instruction No. 4 on the doctrine of "the last clear chance"; (2) upon the denial of his motion for a new trial; and (3) upon the entry of the judgment dismissing the action.

The requested instruction reads as follows:

"You are instructed that if the defendant actually saw the plaintiff in the street ahead of him and should have appreciated the danger, if any, of the situation, but failed to exercise reasonable care to avoid the collision, such failure makes the defendant liable in this action, and you must find for the plaintiff even though the plaintiff may have been guilty of negligence that continued up to the instant of the injury."

The only question presented by appellant in his brief is

his first assignment of error, the other assignments being based upon his assignment No. 1.

Appellant testified that, after parking his car and finding the real-estate office south of the highway closed, he started walking across the highway, not denying that his course was toward the northeast. On his direct examination, the following occurred:

"Q. Well, what is the last you remember before the accident happened? A. When I hit the pavement, when I stepped on the highway. Q. You mean when you started across the highway? A. I had my mind made up before that to go across to this other real estate office. That is practically the last thing I remember. Q. What is the first thing that you remember after the accident? A. Well, about two days after, down in the hospital."

On cross-examination, he testified:

"Q. Do I understand you never did see the defendants' automobile at any time? A. No, I didn't."

On redirect examination, his counsel asked the following question:

"Q. Mr. Sarchett, you testified that you never did see defendants' car? A. I never did."

Appellant repeated this statement several times.

There was testimony to the effect that it had been raining during the day and that, at the time of the accident, the pavement was wet.

Respondent testified that he was driving a 1947 five-passenger Ford which was in good operating condition; that, on the afternoon in question, he was proceeding east along the south lane of the highway; that, when he first saw appellant, the latter was crossing the highway as above stated and was "between midway and three fourths of the way across the first lane"; that he sounded the horn and applied the brakes lightly, lessening the speed of the car; that, apparently, appellant responded to the horn signal and appeared to respondent to have stopped walking after that warning; that respondent then changed his direction to the inside lane to pass in front of appellant; that he could not

say how long appellant stopped, because he "checked the inside lane to see if I could move into it. Naturally, I had to take my eye off the pedestrian when I did that." Immediately after respondent changed the position of his car into the inside lane and started directly east, his car struck appellant. Respondent testified that he tried to swing back to the outside lane, but did not succeed in avoiding the collision.

There can be no question but that appellant was grossly negligent in crossing the highway as he did. *Shelton v. Bennett*, 32 Wn. (2d) 529, 202 P. (2d) 461. Respondent's car was in plain sight and, apparently, appellant entirely disregarded the fact that motor traffic would probably be proceeding along the highway from the west, in the appropriate lane for eastbound traffic. The angle at which he was crossing the road was such that he would not observe eastbound traffic unless he turned his head to his left.

William C. Bump, called as a witness by respondent, testified that he was not acquainted with any party to the action; that he was in the real-estate business; that, at the time of the accident, his office was on the north side of the Bothell highway, being the building to which appellant was going; that, when the accident occurred, the pavement was wet; that the witness was standing in the doorway to his office and saw appellant leave his car and step onto the paved highway, and that he then changed his position to a large window in his office, from which he had a clear view of the highway, and observed respondent's car approaching from the west. He testified that appellant started across the highway on a diagonal course, his back being toward respondent's car, which was approaching along the outside lane. The witness then testified:

". . . I saw the whole thing from the window. I saw the car approaching, I saw the pedestrian stop, the plaintiff stop. . . . Q. Now, sir, just tell the jury what the plaintiff did. A. He walked out into the street, approximately halfway across and there he hesitated, stopped momentarily, and he turned with his back to the oncoming traffic across the street on a diagonal. Q. Now, did you see the direction

taken by the defendant's car? A. I saw the defendant's car coming up the outside lane when the man stopped. When the plaintiff stopped, he swung into the inside lane, and his car slowed down to some extent. Q. All right, sir. Now, where was the car at the time of the accident? A. You mean in relation to this? Q. Yes. A. At the time of the accident the car—two wheels were across the center line. He was swinging across, veering across."

Marvin Creech, called by respondent, testified that he was not acquainted with any of the parties to the action; that, at the time of the accident, he was sitting in a car from which he had a view of the highway; that it was raining; that his attention was called to respondent's car when respondent sounded the horn the second time while proceeding along the outside lane; that the witness saw the car strike appellant, prior to which time the car was moving at "about 15 to 19 miles per hour"; and that the automobile stopped almost immediately. On cross-examination, the witness testified that the accident occurred in the middle of the highway.

John R. Olseene, called by respondent, testified that he was a member of the Washington state patrol, part of his duty being to investigate accidents; that he reached the scene of the accident approximately ten minutes after it occurred; that the pavement was very wet; that appellant had been moved to the office of a motor company, just south of the highway, and that, when he was being placed upon a stretcher, the witness noticed "quite a strong odor of alcohol." Later, the witness asked appellant if he had been drinking, appellant answering that he had had two or three drinks. The witness examined respondent's car and tested the brakes, testifying that "he had plenty of pressure in the brakes."

On cross-examination, appellant testified that, before leaving his home, he "had two drinks," but denied that he drank any more liquor.

Appellant's sole contention on this appeal is that the court erred in refusing to give his requested instruction concerning the first phase of the doctrine of last clear chance.

In the case at bar, it appears that appellant's negligence had not ceased, but was continuing up to the moment of the collision. Appellant offered no evidence concerning the facts immediately preceding the collision, testifying that he remembered nothing save that he started across the pavement toward the real-estate office. The record contains testimony by wholly disinterested witnesses, corroborating respondent's testimony that appellant was proceeding across the wet highway at a considerable angle toward the east, with his back toward approaching traffic from the west; that respondent sounded the horn, and that appellant stopped and then proceeded on his way.

The question, then, is whether the first phase of the doctrine of last clear chance is applicable to the situation presented by the evidence, and whether the trial court committed reversible error in refusing to give the jury an instruction upon that doctrine.

There can be no question concerning appellant's negligence. He was crossing a main highway, not at an intersection or a marked crossing, and was moving at a decided angle, which prevented his having a view to the west, from which direction motor traffic along the south lane would be approaching. He was undoubtedly in a perilous situation in following this course.

In the case of *Mosso v. E. H. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. (N. S.) 1916A, 943, an opinion by Ellis, J., the doctrine of last clear chance is discussed. In defining the first phase of the doctrine, the court said:

"The courts are wide of an agreement as to the extent of the last chance doctrine as applied to the operation of trains, street cars, automobiles and the like. But what we conceive to be the sounder view is this: assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, then, as we have seen, whenever the person in control of such agency actually sees the traveler's situation and should appreciate his danger, the last chance rule applies, without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury."

In *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106, an opinion by Chadwick, J., it is said:

"Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation."

The court then observed that persons driving upon highways are in the exercise of lawful and equal rights, and that the law places upon them no greater burden than that of taking ordinary care not to injure another. The court also stated that the doctrine of last clear chance is not applicable, unless the person sought to be charged with responsibility for an accident has knowledge of a dangerous situation, "sufficiently prior in time to have given him, in the exercise of ordinary care, time to avoid the accident."

In the case of *Steen v. Hedstrom,* 189 Wash. 75, 63 P. (2d) 507, it appeared that the plaintiff was walking in an easterly direction on the right-hand side of a highway (in violation of the law) near Redmond. It was broad daylight and there was a clear view for several hundred feet to the west. The defendant was driving his automobile in an easterly direction, at a lawful speed, and first noticed plaintiff when the latter was about two hundred feet in front of him. There was no other traffic and the plaintiff was unaware of the approach of the automobile. The defendant swerved toward the center of the road until he was from ten to twenty-five feet from the plaintiff, and sounded the horn at the same time that plaintiff turned to his left across the road. The defendant applied the brakes and swerved to his extreme left, but struck the plaintiff, injuring him. As in the case at bar, the opinion states that "The plaintiff did not, seemingly, remember anything other than he was struck by the defendant's automobile."

The jury returned a verdict in favor of the defendant. The trial court granted plaintiff's motion for a new trial and, from that order, the defendant appealed. The opinion states:

"Unless there was sufficient evidence to submit to the jury the question of last clear chance, the judgment must be reversed."

It is also noted that the plaintiff's

". . . negligence never terminated nor culminated in a situation of peril from which he could not by the exercise of reasonable care extricate himself. His negligence continued up to the instant of the injury."

We held that the defendant had the right to assume that the plaintiff "would exercise reasonable care for the safety of his person and take the two or three steps necessary to place him off the highway where he would be safe." The opinion uses the identical language above quoted from *Hartley v. Lasater, supra,* although that case is not cited. This court held that the doctrine of last clear chance was not applicable to the facts, and reversed the order appealed from, with instructions to enter judgment upon the verdict.

In *Everest v. Riecken,* 30 Wn. (2d) 683, 193 P. (2d) 353, we said:

"We are concerned not with a last possible chance but with a last clear chance; and a clear chance to avoid a collision involves the element of sufficient time to appreciate the peril of the party unable to extricate himself and to take the necessary steps to avoid injuring him."

In *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201, it is said:

"The facts in this case show that, after respondent began his left-hand turn at the center of the intersection, only a second or two elapsed before the impact occurred. The interval of time thus afforded the appellant driver was wholly insufficient to avoid the collision. This doctrine to which we are now referring contemplates a last *clear* chance, not a last *possible* chance."

Others of our decisions are to the same effect.

Respondent's testimony that he sounded the horn; that appellant stopped; that respondent slowed his car and turned into the inside lane, is not only uncontradicted but is corroborated by the evidence of disinterested witnesses. Respondent was justified in assuming that, when he sounded

the horn and saw appellant stop, appellant was aware of his presence upon the highway. Respondent took appropriate steps to avoid striking appellant.

In *Burlie v. Stephens*, 113 Wash. 182, 193 Pac. 684, we said, concerning the doctrine of last clear chance:

"This doctrine can never arise where the party charged is required to act instantaneously. It presupposes contributory negligence, and where that negligence creates instantaneously a dangerous situation, without an appreciable lapse of time in which to avoid it, there is no room for its application."

We have also held that the doctrine does not apply to a last *possible* chance, but only to a last *clear* chance.

The doctrine of last clear chance is a modification of the former strict law that contributory negligence, on the part of one seeking damages on account of injuries received from another, barred the plaintiff's recovery. The doctrine was grafted upon the law for the benefit of the injured persons and, in certain cases, permits recovery of compensatory damages.

The application of the doctrine of last clear chance to a state of facts disclosed by evidence introduced at a trial before a court, sitting with a jury, is a question of law to be determined by the court. *Hartley v. Lasater, supra*; *Shultes v. Halpin, supra*.

This court has many times approved the doctrine, and it is to be followed when appropriate.

The trial court did not err in refusing to give to the jury the instruction requested by appellant, and the judgment appealed from is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.

HILL, J. (concurring)—I concur in the affirmance of the judgment.

When the motorist first saw the pedestrian moving across the highway in the outside lane, the pedestrian was in a position of peril, but he apparently extricated himself from that position by stopping. Had he been hit before he stopped

or while standing in the outside lane, the last clear chance doctrine would have applied.

When the pedestrian stopped, the motorist was required to avoid a collision with him by either stopping or going around him. The motorist elected to meet that duty by going around the pedestrian, and to do that he had to take his eyes momentarily off the pedestrian, who was then standing still in the outside lane. When the pedestrian moved forward to the inside lane, he again placed himself in a position of danger, and this time the last clear chance doctrine did not apply, because the motorist did not see him in time to avoid hitting him.

DONWORTH, J., concurs for the reasons stated by HILL, J.

SCHWELLENBACH, J. (dissenting)—The theory of the "last clear chance" doctrine is that one party, by his own negligence, is in a position of peril. Another party, not negligent, sees the perilous position in which the first party is situated. It then becomes the duty of the second party, by the exercise of reasonable care, to do all that he can to prevent possible injury to the first party. Whether or not the second party does exercise such care is a question of fact for the jury.

Here, the appellant, through his own negligence, was in a position of peril. Respondent saw him, sounded his horn and applied the brakes lightly, then proceeded toward the inside lane to pass in front of appellant. While proceeding toward the inside lane he looked to the rear and took his eyes off of appellant. The instant respondent saw appellant in a position of peril due to the latter's own negligence, respondent owed a duty under the "last clear chance" doctrine, by the exercise of reasonable care, to do all that he could to prevent injury to appellant. It was a question of fact for the jury to determine whether or not, under the circumstances, respondent discharged the duty required of him.

I cannot conceive of a clearer case for the application of the "last clear chance" doctrine, and I am fearful that if this opinion prevails, the doctrine might just as well be rolled up and permanently placed off of the highway.

GRADY, J., concurs with SCHWELLENBACH, J.