309 P.2d 976

Patrick T. BLEWETT, Plaintiff-Appellee,

v.

B. O. BARNES, W. G. Lesperance and the Atchison, Topeka and Santa Fe Railway Company, a corporation, Defendants-Appellants.

No. 6127.

Supreme Court of New Mexico.

March 11, 1957.

Rehearing Denied April 30, 1957.

Iden & Johnson, B. G. Johnson, Richard G. Cooper, Albuquerque, for appellants.

Joseph L. Smith, H. A. Kiker, Jr., Albuquerque, for appellee.

SADLER, Justice.

The defendant railway company and two codefendants suffered judgment below of which they complain as appellants before this court on several grounds, all of which relate to errors claimed to have been committed at the trial to their very great prejudice and harm, thereby inducing the jury to award a sizable verdict against them.

The action out of which the judgment arose was one for damages to plaintiff by reason of injuries suffered in a collision between a switch engine of defendant railway company and the plaintiff's car on the 6th day of November, 1956. The trial before a jury consumed the greater part of a week, resulting in a verdict in plaintiff's favor for $15,000 as the amount of damages suffered. Judgment was entered on the verdict for the amount awarded him, as aforesaid, to review which the defendants have prosecuted this appeal.

The issues upon which the cause was tried below were such as usually arise in a case of this kind, namely, negligence on the part of the defendants warranting a recovery, contributory negligence on plaintiff's part barring recovery and in many cases, as in this one, the invocation by the plaintiff of the last clear chance doctrine as a ground of recovery, thus rendering innocuous the contributory negligence of plaintiff, if sustained, and supporting a recovery by plaintiff.

So it was in the case at bar that the cause went to the jury on issues such as enumerated above. The verdict mentioned was duly returned into court after submission

under a general charge. The point at which the collision between plaintiff's automobile and the train of defendant railway company took place was on North 12th Street in the city of Albuquerque, having taken place in the early morning hours of November 6, 1954.

On the evening of November 5, 1954, the plaintiff, Patrick J. Blewett, went to a play in Old Town, Albuquerque. After the performance he, along with others attending, went to the home of a Mr. McCoy on North 12th Street where a party was in progress. The party lasted until after midnight and the plaintiff left the McCoy home around 1:20 a.m. for the return trip to his own home. The car he was driving was followed by cars of others in the party, among them, Mr. & Mrs. Frank Black who were some 20 to 40 seconds behind him at the rate they were travelling. The Blacks, in turn, were followed by a Mr. Gould in his car. All proceeded toward Albuquerque, going south on North 12th Street.

The McCoy home was between two and two and one half miles north of the railroad tracks which crossed the street going in an easterly-westerly direction in the 1500 block on North 12th Street. Coming from the McCoy home, and traveling south on 12th Street, one reaches a long curve to the left in the street which bears back to the right, just before reaching the railroad tracks. The curve straightens out before reaching the tracks at a distance, variously estimated by witnesses from 173 to 266 feet.

There were five sets of tracks at this crossing, the first reached traveling from north to south being some 66.2 feet north of the track upon which the accident occurred. In times past 12th Street had ended at these tracks. Somewhat recently, however, it had been extended on further north and across the tracks, the extension at this time embracing the curve mentioned above. As traffic approached the crossing from the north a standard "cross-buck", or railroad crossing sign, came into view on the traveller's right, located on the right of way 13 feet north of the first set of tracks.

As indicated above, Blewett, the plaintiff, was driving in a southerly direction along 12th Street in a 1949 Ford convertible on the occasion in question. As he approached the crossing in the 1500 block on 12th Street, traveling at about 25 miles per hour, the two codefendants, as engineer and fireman, respectively, were approaching 12th Street from a southwesterly direction, generally, in charge of a switch engine pulling two loaded cars and an empty, moving at 5 to 6 miles per hour. The collision between the Blewett car and the switch engine occurred in the west half of 12th Street, being the right half of 12th Street looking south. It took place on the fourth set of tracks, going south, as plaintiff was doing at the time; or, on the second set of tracks, if one should be travelling north on 12th Street. The set

of tracks on which the accident occurred was 66.2 feet from the set of tracks farthest north.

The distance from the first set of tracks encountered travelling south on 12th Street to the point where the street started to curve was variously estimated by different witnesses as 200 feet, and as low as 137 feet from point of the accident by one witness. The last curve encountered going south on 12th Street was a 12° curve and according to certain witnesses it was 266.2 feet from the point where the curve straightened out going south to the track on which the collision occurred.

Counsel, for defendants divide the grounds of negligence relied upon by plaintiff into four separate categories at the commencement of their argument. They are (1) Speed of the train; (2) absence of train signals and lights; (3) ordinary approach and adequacy of railroad crossing signs; and, (4) "last clear chance doctrine". The divisions thus made represent to our minds a fair statement, or appraisal of the grounds of recovery upon which the plaintiff sought recovery. An inordinate mass of conflicting testimony appears in the large record filed on the issues of whether the bell of the locomotive was rung, or the whistle was blown, or the engine's headlight was shining; also, whether the crossing was adequately guarded and could be fairly treated as a "dangerous crossing".

In like fashion, the issues of plaintiff's own negligence was litigated from the beginning of the trial to the bitter end. Was he, himself, exercising due care for his own safety? Could he not have brought his car to a stop after apprehending danger? Did he stop, look and listen? And so on and on throughout the trial. Even to attempt a recitation of the mass of conflicting testimony on the major issues of defendants' primary negligence and the plaintiff's contributory negligence presents an insuperable task and one well calculated soon to have the analyst in the unhappy state of being "unable to see the forest for the trees."

Suffice it to say, we have given careful consideration to the evidence pro and con on the two major issues—negligence and contributory negligence. We must give it as our settled opinion that the record contains substantial evidence supporting a verdict of negligence on the part of defendants and that it established, at the same time, contributory negligence on the part of the plaintiff, as a matter of law, sufficient to bar a recovery by him, if the matter rested on a determination of those two issues.

As pointed out by counsel for plaintiff the record discloses facts either by plaintiff's own admissions, or according to evidence presented to the jury by him, (1) that he had come out of the curve in the street

north of the crossing at a distance variously fixed at 172 to 266.2 feet from the point of impact; (2) that his automobile could have been stopped within 26 to 27 feet after first application of the brakes; (3) that he looked neither to the right nor the left but proceeded straight ahead under such conditions that had a child been in the path of his car its presence would have gone unnoticed; (4) that a railroad crossing sign stood on the right of way 13 feet from the first track and went unnoticed and unheeded; (5) the presence of three tracks, necessarily crossed by plaintiff in reaching the train with which he collided on the fourth, failed to cause him to alter his course or slacken his speed.

In other words, the plaintiff failed to observe the primary essentials of due caution and safety in approaching and driving upon a crossing with which he undoubtedly was familiar as one driven over by all others attending the performance that evening enroute to the performance and unquestionably by him, although his memory was vague on whether he had crossed it earlier that night.

■ To summarize the evidence, he failed to stop, look and listen. Instead, he drove blindly upon the crossing, over the first, the second and even the third track, and into the path of an oncoming train on the fourth track before being stopped by it. This convicted him of contributory negligence, as a matter of law. The Baltimore & O. Ry. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167; Morehead v. Atchison, T. & S. F. Ry. Co., 27 N.M. 349, 201 P. 1048; Sandoval v. Atchison, T. & S. F. Ry. Co., 30 N.M. 343, 233 P. 840. Even, if it could be said the evidence would support a finding that plaintiff "listened," negative as such testimony is, the testimony is undisputed that he did not stop, nor did he look. Ordinarily, a showing of all three factors is essential to establish due care.

Naturally, the conclusion reached calls for a new trial, rather than a direction to set aside the judgment below and dismiss the complaint. This will leave undetermined the effect of the injection into the case of the doctrine of last clear chance invoked by the plaintiff by his amended complaint. It is clear enough that a finding by the jury in plaintiff's favor on the issue would in and of itself support the judgment rendered, if we were able to determine from the record the submission to the jury of the false issue of contributory negligence did not prejudice the defendants.

■ The trial court was requested by them, when plaintiff rested in the first instance, to hold as a matter of law that he was guilty of contributory negligence and to direct a verdict in defendants' favor. This motion was properly overruled by the court in so far as it requested a directed verdict in their favor, since there was ample

evidence before the jury to call for submission of the case to the jury on the issue of the doctrine of last clear chance, or discovered peril. See, Floeck v. Hoover, 52 N.M. 193, 195 P.2d 86; LeDoux v. Martinez, 57 N.M. 86, 254 P.2d 685; Sanchez v. Gomez, 57 N.M. 383, 259 P.2d 346; Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405, 407.

In Merrill v. Stringer, supra, we said: "The parties are in accord on the essential elements which must be present in order to warrant the application of the last clear chance doctrine, (a) that the appellant has been negligent, (b) that as a result of her negligence she is in a position of peril from which she cannot escape by the exercise of ordinary care, (c) that the defendant knows or should have known of plaintiff's peril, and (d) that appellee had a clear chance by the exercise of ordinary care to avoid the injury and that he failed to do so."

It can fairly be said the evidence supports a finding the defendants knew of the plaintiff's peril. To quote from testimony by Barnes, occupying the fireman's cab at the time, of a statement by him to Lesperance with his hands on the throttle. He testified:

"Q. Now, you recall that when the locomotive was still approximately one box car length, or 50 feet from the crossing, you said to Mr. Lesperance, 'A car is coming, and it doesn't look like it is going to stop.' That is correct, isn't it? A. That is correct." (Emphasis ours.)

Nor was testimony lacking to support a finding the defendant had a last clear chance by the exercise of ordinary care to rescue plaintiff from his position of peril and avoid the injury. Note this testimony from witness, Barnes, to wit:

"Q. It is a fact, is it not, sir, that if Mr. Lesperance had applied the brakes fully at that point, he could have stopped before he reached the railroad crossing? A. Yes, sir."

A review of the evidence in the record bearing on the issue of last clear chance satisfies us that it affords ample support for a finding by the jury embraced within its general verdict, that notwithstanding the plaintiff's own negligence, which preceded it in point of time, an exercise of due care and caution by the defendants after discovering the perilous situation to which that negligence had exposed him, very well may have avoided the injury and consequent damage which befell him.

The vice in the situation as disclosed by the proceedings at this point arises on the court's error in submitting the issue of contributory negligence at all. It had no place in the case save as its presence, noticed as a matter of law by the court, com-

bined with the primary negligence of the defendants, lends support for submission to the jury of the issue of last clear chance, or as sometimes called, discovered peril. So it is that the last named doctrine was properly submitted to the jury, even though contributory negligence was not.

It is the improper submission of this issue that injects prejudicial error into the case, requiring a reversal and remand of the cause for a new trial. For, how are we to explain the verdict? Did the jury resolve the issue of contributory negligence in plaintiff's favor and thus ignore the issue of last clear chance? If it did, it committed prejudicial error, since plaintiff was guilty of contributory negligence as a matter of law.

It will not do to say defendants are not prejudiced, in as much as the general verdict embraces a finding against them on that issue, and thus provides support for the verdict. It can not be safely assumed the jury ever reached the issue of last clear chance. It would have been unnecessary for them to do so, if they were to acquit the plaintiff of contributory negligence by their verdict. Thus it is the trial court erred in submitting the issue of contributory negligence to the jury presenting, as it did, a false issue for the jury's consideration. American Insurance Co. v. Foutz and Bursum, 60 N.M. 351, 291 P.2d 1081, 1091.

In the case just cited, we had before us a somewhat similar situation. In disposing of it, we said:

"The conclusion that there was no contributory negligence places the trial court in error, of course, in submitting that issue. The defendants as appellees seek to avoid effect of the error by denying defendants benefit of it through their failure to request special interrogatories, so that it could be ascertained whether the verdict for defendants rests on a finding of no negligence on their part, or contributory negligence on Bloomfield's part. The giving of special interrogatories is discretionary with the trial court, subject to review for abuse. Larsen v. Bliss, 43 N.M. 265, 91 P.2d 811; Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214. If a proper case for them, the defendants were privileged to the same extent as plaintiffs to make a request therefor. We think the trial court erred in submitting the issue of contributory negligence and the failure of plaintiffs to request special interrogatories does not deny them benefit of the error."

It is argued under a separate point that the court erred in overruling the several motions of defendants, Barnes and Lesperance, for a directed verdict at the conclusion of all the evidence. In holding, as we

do, there was sufficient evidence to go to the jury on the issue of last clear chance, we have to all intents and purposes, at the same time and by the same token, ruled the evidence sufficient to go to the jury on the question of actionable negligence on the part of defendants, Barnes and Lesperance. The trial court did not err in overruling their separate motions for directed verdicts.

■ There was no error, nor do we see any abuse of discretion, in the action of the trial court in permitting a view of the premises. The only prejudice claimed is that the view took place in the daytime, whereas the accident was at night. Indeed, if anything, it would seem the hazards surrounding the crossing would be magnified by a night view as compared with a view in the daytime. We think there was no error in the trial court's action in this behalf. Thompson v. Anderman, 59 N.M. 400, 285 P.2d 507. See, also, 88 C.J.S., Trial, § 47, p. 118.

■ Numerous other errors are presented and argued but the conclusions reached render it unnecessary to consider them except to say the instructions on last clear chance have been examined and appear to have given the issue fairly to the jury. Of course, all instructions are to be read and considered together and if, when so considered, they fairly present an issue to the jury in the light of the evidence touching it, they are not to be made the basis for awarding a new trial. Griego v. Conwell, 54 N.M. 287, 222 P.2d 606; Lujan v. McCuistion, 55 N.M. 275, 232 P.2d 478; Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047; State v. Compton, 57 N.M. 227, 257 P.2d 915. So viewed here on the issue of last clear chance, they present no ground for a claim of prejudicial error.

It follows from what has been said the judgment of the trial court must be reversed and the cause remanded with a direction that it be set aside and an order entered granting defendants a new trial of the single issue whether they are liable to plaintiff, under the evidence then adduced, by reason of the last clear chance doctrine and, for what amount, within the pleadings. The defendants will recover the costs of this appeal.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

KIKER, J., not participating.