350 P.2d 1028

Anthony Ely LUCERO, a minor, by his father and next of friend, Antonio Lucero; and for himself, Antonio Lucero, Plaintiffs-Appellants,

v.

Juan J. TORRES, Defendant-Appellee.

No. 6535.

Supreme Court of New Mexico.

April 4, 1960.

Lorenzo A. Chavez, Arturo G. Ortega, and Melvin L. Robins, Albuquerque, for appellants.

Schall & Sceresse, Albuquerque, for appellee.

CHAVEZ, Justice.

The action is for personal injuries. From a judgment based on a jury verdict for the defendant, plaintiff appeals.

Rio Grande Boulevard is a much traveled public thoroughfare running north and south in the city of Albuquerque. At the approximate point where this cause of action arose, the roadway was 19 feet and 10 inches in width. It has since been widened. It is flanked by residences on both the east and west boundaries. There were no intersections or traffic control signals in the immediate proximity; and there is not any indication of the existence of public street lighting devices at the situs.

It was dusk, shortly before eight o'clock on the night of July 20, 1956, when the plaintiff-appellant, a boy eight years of age, left the home of his aunt, located on the west side of the boulevard, and proceeded to cross to the east side thereof where his parents resided. Simultaneously, the defendant-appellee was driving his 1941 Ford automobile with headlights on, at a speed of approximately 20 miles per hour, in a northerly direction on the said boulevard, when the appellant suddenly and initially appeared, directly in the path of appellee's car. Appellee applied his brakes, shouted "Look out" in Spanish, turned his automobile to the right and skidded into the appellant, throwing the child to the pavement, whereby he suffered personal injuries. Appellant does not remember whether he looked to the right or to the left before

entering the street and remembers nothing concerning the accident subsequent to setting foot upon the west side of the boulevard. There were no eyewitnesses to the collision. There was another car ahead of appellee's vehicle about two car lengths ahead and its lights were on. It had been raining.

Under Point One appellant contends that the court erred in instructing the jury, over his objection, on the doctrine of unavoidable accident.

Instruction No. 14 reads as follows:

"One of the defenses of the defendant, in these cases, is that the accident was an unavoidable accident. If you find from the evidence that the accident, and resulting injury complained of, was one which by the exercise of reasonable care the defendant could not have reasonably been expected to foresee and prevent, then it belongs to that class of occurrences which in law is denominated as purely accidental and for which no liability exists. The defendant has the burden of establishing this defense, by a preponderance of the evidence."

The issues raised by appellant respecting unavoidable accident are twofold. The first is whether or not the charge was a correct statement of the law, and the second is whether there is sufficient evidence of record to support the trial court's instruction on unavoidable accident. Before we proceed to consider appellant's first point, it is necessary to review appellant's right to raise an appeal on this issue. We think not. At the trial of this action, appellant failed to specifically object to the instruction on unavoidable accident on the ground that it was an inaccurate statement of law. On appeal, he now contends that the trial court erred in giving an inaccurate charge. Appellant's objection was as follows:

"Objects to the Court's Instruction Number 14, on the issue of an unavoidable accident, on the ground that the evidence does not justify the giving of such an instruction; that there was a clear showing of negligence on the part of the defendant, and that to submit this issue to the jury unduly emphasizes the burden on the plaintiffs through their case to their prejudice."

Appellant's objection on this point is not timely under Rule of Civil Procedure 21-1-1(51) (g), which states:

"For the preservation of any error in the charge, objection must be made or exception taken to any instruction given; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. Reasonable opportunity shall be afforded counsel so to object, except or tender instructions."

Appellant, therefore, cannot at this time raise the issue since he has failed, by proper objection, to preserve the error, if any, of the lower court. The objection served only to raise the second issue on appeal respecting unavoidable accident, that is, the instruction was not supported by the evidence.

It is clearly evident that the trial court was not apprised of the inaccuracy of its instruction, as being an incorrect statement of the law of unavoidable accident, by the objection made by appellant.

■ Appellant, in his brief, claims error because the court's instruction failed to include the proposition that both parties had to be free from negligence, and that if the unforeseeability was a result of defendant's negligence, then the doctrine of unavoidable accident does not apply. However, appellant failed to point out to the trial court this claimed error.

In the case of State v. Compton, 57 N.M. 227, 257 P.2d 915, 921, we said:

"The primary purpose of any objection to an instruction is, of course, to alert the mind of the judge to the claimed error contained in it, to the end that he may correct it. This fundamental purpose must be read into any and all rules on the subject. * * * But, where the court has instructed erroneously on the subject, although a correct instruction has been tendered on the point, if it leaves it doubtful whether the trial judge's mind was actually alerted thereby to the defect sought to be corrected by the requested instruction, the error is not preserved unless, in addition, the specific vice in the instruction given is pointed out to the trial court by proper objection thereto."

Similarly, in State v. Blevins, 39 N.M. 532, 51 P.2d 599, 600, we said:

"Under rule 70–108 of the trial court rules, it was incumbent upon the appellant either to object to the instruction given and point out the error, or to tender one framed to present his theory. Laws v. Pyeatt, 40 N.M. 7, 52 P.2d 127. Having failed to do either, he cannot now complain."

And in State v. Baize, 64 N.M. 168, 326 P.2d 367, 368, we stated:

"We have held time and again a defendant must call the attention of the trial court to any claimed error in the instructions by appropriate objection before they may obtain a reversal on account of such error."

See, also, State v. Richardson, 48 N.M. 544, 154 P.2d 224; State v. Smith, 51 N.M. 328, 184 P.2d 301; State v. Lopez, 46 N.M. 463, 131 P.2d 273. The rule is equally applicable to civil as well as criminal cases.

■■ We now pass to appellant's second premise that the trial court's instruction

on unavoidable accident was error on the ground that the evidence does not justify the giving of such an instruction. Appellee affirmatively pleaded that the accident complained of was unavoidable. There is evidence in the record bearing upon this point. We have repeatedly held that a party is entitled to an instruction on the theory of his case upon which there is evidence. State v. Martinez, 30 N.M. 178, 230 P. 379; Salazar v. Garde, 35 N.M. 353, 298 P. 661; State v. Hughes, 43 N.M. 109, 86 P.2d 278; Clay v. Texas-Arizona Motor Freight, Inc., 49 N.M. 157, 159 P.2d 317; State v. Jones, 52 N.M. 235, 195 P.2d 1020; Stewart v. Oberholtzer, 57 N.M. 253, 258 P.2d 369; Hanks v. Walker, 60 N.M. 166, 288 P.2d 699; See also, Graham v. Consolidated Motor Transport Co., 112 Cal.App. 648, 297 P. 617–618; Wilson v. Roach, 101 Okl. 30, 222 P. 1000.

In Hanks v. Walker, 60 N.M. 166, 288 P.2d 699, 701, we state the rule as follows:

"In this jurisdiction, it is prejudicial error to refuse to instruct specifically on a litigant's theory of the case, providing such theory is pleaded and there being evidence to support it."

The court presented to the jury the issues of negligence alleged by appellant and the issue of contributory negligence and unavoidable accident asserted by appellee. All of these issues were controverted issues of fact to be passed upon by the jury. The appellee denied negligence on his part, and there is reasonable evidence in the record which, if believed, will support his denial. The jury might rightfully find as to him, that the accident was unavoidable. We believe that in a case where the issues of negligence, contributory negligence and unavoidable accident are present, and the evidence being in conflict as to the issue of negligence and contributory negligence, the jury may conceivably find, with evidentiary support, that neither the appellant nor the appellee were negligent. There being questions present for the jury to decide as to whether appellee or appellant were negligent, or whether both or neither were negligent, we believe that in such a case, an unavoidable accident instruction is appropriate.

Gaylord v. Schwartz, 46 Wash.2d 315, 281 P.2d 247, was a case involving a thirteen-year-old boy who was riding a bicycle on a raised wooden sidewalk along one side of a bridge. The defendant, driving his truck along the bridge in the same direction, approached the bicycle from the rear, the two vehicles came into collision and the boy was injured. The jury returned a verdict for defendants, and judgment was entered dismissing the action. Plaintiff appealed. The only question before the court on appeal was whether the trial court erred in giving an instruction on unavoidable accident.

The court held that appellant was correct in asserting that an instruction on

unavoidable accident is authorized only when the evidence shows or justifies an inference that an unavoidable accident has occurred, as that term has been defined. See Brewer v. Berner, 15 Wash.2d 644, 131 P.2d 940.

Appellant also contended that the Brewer case stands for the proposition that an unavoidable accident has not occurred unless it was caused by some agency outside of the parties themselves, such as an unexpected condition or an unpreventable mechanical failure. The court then said:

> "We need not pass upon this question, since the instruction given, which was not excepted to as to form, does not so limit the definition of unavoidable accident. The instruction in question defines unavoidable accident only as 'an accident that occurred without having been proximately caused by negligence.'"

The court then concluded, upon examination of the record that there was evidence showing or justifying an inference that this accident occurred without having been proximately caused by negligence, and since there was evidence to support a finding that neither the truck driver nor the boy was negligent, it was proper for the trial court to give the instruction on unavoidable accident.

See, also, Keltch v. Strunk, Okl.1956, 295 P.2d 785; and Beliak v. Plants, 1958, 84 Ariz. 211, 326 P.2d 36. See annotation of cases on unavoidable accident instruction, 65 A.L.R.2d 12 et seq.

While the instruction given by the trial court on unavoidable accident may not be in strict accord with the definition of "unavoidable accident" as set out in Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671, and in Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640, and even if it is true that in most of the instructions, "unavoidable accident" is defined as being "a casualty which occurs without negligence of either party, and when all means which common prudence suggests have been used to prevent it," nevertheless, no proper objection having been made thereto, as hereinbefore set forth, reversal cannot be predicated thereon. Although the instruction should have been worded differently, appellant did not object to the form of the instruction, and objected only to the granting of the instruction.

We do not mean to say that every motor vehicle accident case warrants the giving of an unavoidable accident instruction. On the other hand, the very nature of some of the motor vehicle cases, such as this, suggests that genuine questions of mere accident or of unavoidable accident, giving foundation for the instruction, may be present. A prominent feature may be one of surprise, sudden appearance and reasonably unanticipated presence of a pedestrian, combined with circumstances which

present a fair issue as to whether the failure of a driver of a motor vehicle to anticipate or sooner to guard against the danger or to avoid it, is consistent with a conclusion of the exercise of his due care. In such cases, the trial courts are inclined to grant the instruction on unavoidable accident and their action in so doing is generally approved by the appellate courts. Browne v. Bassett, 191 Okl. 22, 126 P.2d 705; Blanton v. E. & L. Transport Co., 146 Tex. 377, 207 S.W.2d 368; Keller v. Hunter, Sup., 36 N.Y.S.2d 589; Hinkle v. Union Transfer Co., 10 Cir., 229 F.2d 403; Maloney v. Jussel, 125 Colo. 125, 241 P.2d 862; Biladeau v. Pomerenke, 33 Wash.2d 145, 204 P.2d 518; Swift & Co. v. Eanes, Tex. Civ.App., 92 S.W.2d 522; Rettig v. Coca-Cola Bottling Co., 22 Wash.2d 572, 156 P.2d 914.

Appellant relies on Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500, 504, 65 A.L.R.2d 1, in which case the California Supreme Court disapproved all unavoidable accident instructions and abandoned the contrary, long established California rule. The California court disapproved of such instructions in broad and general terms, as being "an obsolete remnant from a time when damages for injuries to person or property directly caused by a voluntary act of the defendant could be recovered in an action of trespass and when strict liability would be imposed unless the defendant proved that the injury was caused through 'inevitable accident,'" and by branding such instruction as confusing and unnecessary. Nevertheless, since the Butigan case, in Martz v. Ruiz, 1958, 158 Cal.App.2d 590, 322 P.2d 981, and in Brenner v. Beardsley, 1958, 159 Cal.App.2d 304, 323 P.2d 841, the California court used language that intimates that the giving of an unavoidable accident instruction might not be error where there was evidence that the accident resulted from a cause other than negligence. Also, in Rayner v. Ramirez, 1958, 159 Cal.App.2d 372, 324 P.2d 83, and in Emerton v. Acres, 1958, 160 Cal.App.2d 742, 325 P.2d 685, it was intimated that a proper case for the giving of an unavoidable accident instruction might exist where there is evidence which would support the finding of an unavoidable accident. We refuse to follow the rationale pronounced in Butigan v. Yellow Cab Co., supra.

The pertinent evidence as to the accident is set out in our discussion under Point Two of appellant, but suffice it to say that we have reviewed the record and find that the instruction on unavoidable accident is amply supported by the evidence.

■  Appellant, under Point Two, contends that the court committed error in refusing to instruct the jury on the doctrine of the last clear chance.

We have repeatedly stated those elements which must be present in order to warrant

the application of the last clear chance doctrine, as follows:

(a) That the plaintiff has been negligent;

(b) That as a result of his negligence, he is in a position of peril, from which he cannot escape by the exercise of ordinary care;

(c) That the defendant knows, or should have known, of plaintiff's peril; and

(d) That defendant then had a clear chance, by the exercise of ordinary care, to avoid the injury, and that he failed to do so.

Floeck v. Hoover, 52 N.M. 193, 195 P.2d 86; ·Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405; Sanchez v. Gomez, 57 N.M. 383, 259 P.2d 346; Blewett v. Barnes, 62 N.M. 300, 309 P.2d 976.

The facts in the record show that on the night of July 20, 1956, at a little before eight o'clock, defendant was driving north on Rio Grande Boulevard, at approximately 20 miles per hour. The pavement was wet, as it had been raining. The city policeman, Murray, testified that, in his opinion, the car could have been going between 25 and 30 miles per hour. The evidence shows that a sign on Rio Grande Boulevard designated the lawful speed limit as 35 miles per hour.

The plaintiff boy came out of his aunt's home, which is located on the west side of Rio Grande Boulevard, with his aunt, Mrs. Josephine Perea. They walked in an easterly direction from the house until they reached a point about one-half of Mrs. Perea's yard, and she saw plaintiff boy when he was at the west end of the pavement. She then turned and was going back to her house, when she heard a noise, turned around, and saw appellant on the pavement. She did not see the accident. Appellant testified that, after he walked out of the house, he continued walking east through his aunt's yard, and walked to the west end of the pavement. He does not remember whether he looked to the right or to the left as he reached the pavement and he does not remember anything from that moment on until he found himself in the hospital.

The father of appellant, Antonio Lucero, was in the back of his home, which lies on the east side of Rio Grande Boulevard, and although he saw the car at the corner of the house, he did not see the accident. Mr. Lucero also testified that the traffic about the time of the accident on Rio Grande Boulevard was rather light.

The testimony of the defendant-appellee as to the accident is as follows:

"Q. All right. Then tell the court and jury what 'occurred. What happened? A. Well, from there, I drove about, I don't know how many blocks from Indian School, or up to the acci-

dent, so I was driving, and when I got up there, this little—I didn't see the little boy until I—he was in front of my car. So I put my brakes on, turned the wheel to avoid that accident, but the boy was running, and I couldn't avoid it."

The defendant was also asked the following questions by the attorney for the plaintiff:

"Q. Mr. Torres, I want to know clearly when, from your present contention and recollection, you first saw this boy. A. Well, I saw that boy right in front of my car, and I—it happened so quick that I put my brakes, and—turned to the right.

"Q. All right. And about how many feet was the front of your car from the little boy, if you can recall? A. Well, I don't know. He was too close. I don't know how far it was.

"Q. Now, when you testified on direct examination that you saw the little boy running, you really didn't mean to lead the jury to believe that, did you, because you didn't see him, according to your present statement, until he was right in front of your car? A. Yes, right in front of my car.

"Q. So you didn't see him running, then? A. Well, he was running, because I pulled my car to one side, and he ran into my car.

"Q. But as I understand it, you saw him immediately in front of your car, and it happened just like that. A. That is right."

The defendant also testified that at the time and shortly before the time of the accident, there was a car in front of his car going in the same direction and about two car lengths in front of him, and approximated that the car in front of him was at a distance of about 40 feet. The front car didn't stop, and kept going on. The defendant further testified as follows:

"Q. Now, you say that this boy— when did you see him for the first time, Mr. Torres? A. Well, I saw him in front of my car, and that is—

"Q. He was right out there in front of your car? A. Yes.

"Q. Then what did you do? A. Well, I put the brakes on my car, and turned to one side, and I say in Spanish, 'Cuidado', and I turned to my right, which means 'Look out'.

"Q. Did you say anything else, besides 'Cuidado'? A. No.

"Q. And did you put on your brakes, and turn at the same time? A. Yes, sir.

"Q. Now, at the area of the accident, was this other car still in front of you at that point? A. It was go-

ing in front of me, but they didn't stop. He kept on. He didn't see it.

"Q. He kept going? A. Yes, sir.

"Q. You say you put on your brakes and turned to the right? A. Yes.

\* \* \* \* \*

"Q. Now, I know this happened very suddenly, but could you tell us where—what portion of your car struck little Tony Lucero? A. On the light of the left fender, it broke the light, glass.

"Q. And you already had your wheels turned when this happened? A. Yes.

"Q. Were you already starting to skid when you hit the boy? A. Oh, I guess already skid when I hit the boy.

"Q. You were already in a skid when you hit the boy? A. (Nods yes.)

"Q. And you say this other car was in front of you? A. Yes."

The appellee also testified as follows:

"Q. Did you have your lights on, at that time? A. Yes, sir.

"Q. Was it dark at that time, to require you to put on lights? A. It was a little dark.

"Q. Were your lights in good condition? A. Yes."

The city policeman, Murray, testified that the point of impact in relation to the east side of the street was six feet six inches from the east side of the pavement; and that the part of the automobile which actually came in contact with the boy was somewhere from the center of the car to the left side; that the skid marks made by defendant's car on the left side of the vehicle were 47 feet of skid marks, and on the right side, 45 feet, and that the skid marks angled to the right. The policeman estimated that about one-half of the skid marks were before the point of impact and about one-half after the point of impact; that is, that there were approximately 22 and a half feet to 23 and a half feet of skid marks before the point of impact and that there was a reaction time of probably between 40 and 50 feet before the skid marks actually took place, or became noticeable on the pavement.

■ The question arises in this case, did appellee have a last clear chance, by the exercise of ordinary care, to avoid the injury, and if he did, did he fail to do so? The doctrine of the last clear chance implies time for appreciation and thought and time to act effectively.

■ Appellee, driving in the nighttime, at approximately eight o'clock in the evening, when it had been raining, driving at a reasonable rate of speed, with his lights on, and another car approximately 40 feet

in front of him, suddenly sees appellant boy running in front of his car; he applies his brakes and turns his car to the right to avoid the accident. Appellee only had a short time from the moment he saw the boy running in front of his car. Under this evidence we cannot say that a finding could be sustained that, after appellee knew or should have known of appellant's peril, that he then had a last clear chance by the exercise of ordinary care to avoid the injury and failed to do so.

The case of Hartford Fire Insurance Company v. Horne, 65 N.M. 440, 338 P.2d 1067, 1073, was one in which the trial court submitted the issue of the last clear chance by an instruction. The court, speaking through Mr. Justice McGhee, stated:

"The trial court also submitted the issue of the last clear chance by an instruction on the subject which is not objected to as to its form.

"We are of the opinion this issue should not have been submitted under the record made in this case for the reason that the evidence would not, in our opinion, sustain a finding that after the truck driver knew or should have known of the decedent's peril that he then had a clear chance by the exercise of ordinary care to avoid the injury and failed to do so. Also, Miss Bolke had ample opportunity to ex-

tricate herself by simply turning into her proper lane of traffic. See, Floeck v. Hoover, 1948, 52 N.M. 193, 195 P.2d 86. In the short time the truck driver had to turn after realizing she would not turn back into her lane, he cannot be held liable because he turned to the left instead of the right."

The court, in the Hartford Fire Insurance Company case, then quoted from Erickson v. Barnes, 6 Wash.2d 251, 107 P.2d 348, 353.

The trial court instructed the jury fully upon the question of negligence, proximate cause, contributory negligence and proper lookout, and the court further instructed the jury properly that the appellant child was not held to the standard of care applicable to an adult, and that the plaintiff child is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental ability and experience. The trial court further instructed the jury as follows:

"You are further instructed, members of the jury, that Anthony Ely Lucero is presumed by law to have used due care for his own safety, and unless you find that this presumption of care and caution on the part of Anthony Ely Lucero was overcome by circumstances or evidence of negligence on his part produced by the defendant,

then that presumption of freedom from contributory negligence shall abide in plaintiff's case."

■ The overwhelming weight of authority is that the doctrine of last clear chance can never arise where the party charged is required to act instantaneously and it presupposes contributory negligence, and where that negligence creates instantaneously a dangerous situation, without an appreciable lapse of time in which to avoid it, there is no room for its application. See Sarchett v. Fidler, 37 Wash.2d 363, 223 P.2d 843; Johnston v. Vukelic, 67 Wyo. 1, 213 P.2d 925; Hardiman v. Dyson, 194 Va. 116, 72 S.E.2d 361; Schumacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Bush v. James, 152 Neb. 189, 40 N. W.2d 667; Kumkumian v. City of New York, 305 N.Y. 167, 111 N.E.2d 865; Matheny v. Central Motor Lines, 233 N.C. 673, 65 S.E.2d 361; Durant v. Stuckey, 221 S.C. 342, 70 S.E.2d 473; Hartley v. Lasater, 96 Wash. 407, 165 P. 106; Sinclair v. Record Press 1958, 52 Wash.2d 111, 323 P.2d 660.

Restatement of the Law, Torts, Negligence, Section 479, page 1257, states the rule as follows:

"In order that the defendant may be liable, it is necessary that he has discovered or should have discovered the plaintiff's dangerous position in suffi-cient time to enable him to avert his harm by the careful use of his then existing ability. Otherwise his failure to exercise reasonable care cannot make him liable since it is not a substantial factor in bringing about the plaintiff's harm and, therefore, cannot be its cause (See Sections 431 and 432)."

In 38 Am.Jur., Negligence, Section 219, page 905, the rule is stated as follows:

"Discovery of the danger, or a duty to discover it, when offered as a predicate for a charge of negligence on the part of the defendant after the peril arose, involves something more than a mere discovery or the duty to discover the injured person; it includes a duty in the circumstances to appreciate the danger in time to take the steps necessary to avert the accident. It has been said that last clear chance implies thought, appreciation, mental direction, and lapse of sufficient time effectually to act upon the impulse to save another from injury. The doctrine is not applicable where the emergency is so sudden that there is no time to avert the accident. Succinctly stated, the last clear chance must be a clear one."

Rettig v. Coca-Cola Bottling Co., 22 Wash.2d 572, 156 P.2d 914, 919, was a case involving a four-year-old child who was

killed when struck by a truck belonging to the defendant. Judgment was for the defendant and plaintiff appealed.

One of the assignments of error was based upon the refusal of the trial court to give a requested instruction upon the doctrine of last clear chance. The court said:

"As we view the facts of the case and the inferences necessarily to be drawn from them, it conclusively appears that the driver of the truck either did not see the child before the impact or there was such a brief space of time between when the child could have come within the range of his vision and the happening of the accident that there would not have been an opportunity on the part of the driver of the truck to have acted and hence there would be no room for the application of the doctrine of last clear chance.

"The rule has been pronounced that in order to apply the doctrine of last clear chance there must be sufficient time between the moment of danger and the happening of an accident as to afford an opportunity for an appreciation of what may happen, and no duty to act arises until a party is put to the hazard of choice by some act of the other party. Hartley v. Lasater, 96 Wash. 407, 165 P. 106; Burlie v. Stephens, 113 Wash. 182, 193 P. 684; Hynek v. Seattle, 7 Wash.2d 386, 111 P.2d 247; Colwell v. Nygaard, 8 Wash. 2d 462, 112 P.2d 838."

See, also, Lapuyade v. Pacific Employers Ins. Co., 5 Cir., 1953, 202 F.2d 494. Compare Dean v. Century Motors Inc., 1946, 81 U.S.App.D.C. 9, 154 F.2d 201; see, also, Werner v. Schrader, 127 Colo. 523, 258 P.2d 766.

Appellant relies on Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405, 407. In the Merrill case, appellant, plaintiff below, contended that appellee had a last clear chance to avert the injury by the exercise of ordinary care, after having appreciated her danger and having reason to suppose that she would not save herself from injury, but failed to do so. Conversely, appellee, while admitting his negligence in not seeing appellant, contended that the last clear chance doctrine was not applicable because appellant was physically able to extricate herself by the exercise of ordinary care, and that appellee did not have actual knowledge of appellant's perilous situation. The court directed the verdict for the defendant on the basis that the doctrine of last clear chance did not apply.

This court, in the Merrill case, stated:

"We think the court committed error. The case was disposed of on the issues of negligence and contributory negli-

gence. The verdict should be directed only if in the exercise of sound discretion the court can say there is neither evidence nor permissible inference which would support a verdict for the plaintiff.

"It need not appear that appellant was physically unable to extricate herself. The rule applies with equal force where a plaintiff is unable to escape danger because wholly unaware of it where a defendant actually sees the perilous position and could have averted the injury by the exercise of ordinary care. Sanchez v. Gomez, 57 N.M. 383, 259 P.2d 346; * * *."

We do not believe that the evidence in this case would sustain a finding (1) that when appellee became aware of appellant's perilous position, appellee failed to use ordinary care to avoid the accident, and (2) that appellee became aware of appellant's perilous position in time to avoid the accident.

We are of the opinion that, under the record in this case, the court did not commit error in refusing to submit to the jury the issue of the last clear chance, as contained in appellant's requested instruction number 13. The judgment is affirmed.

It is so ordered.

McGHEE, C. J., and COMPTON, CARMODY, and MOISE, JJ., concur.